United States District Court
Southern District of Texas
ENTERED

JAN 3 0 2001

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR, | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. C-00-69 |
| | § | |
| TEXAS A&M UNIVERSITY- | § | |
| KINGSVILLE et al. | § | |
| | § | |

## ORDER GRANTING IN PART AND DENYING IN PART
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Joseph K. Connor filed a lawsuit against his former employer, Texas A&M University-Kingsville (TAMUK), Humberto Garcia individually and in his official capacity and Robert Bazan, individually and in his official capacity, alleging violation of his rights under 42 U.S.C.A. § 1983, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq., and the Texas Commission on Human Rights Act, Texas Labor Code, § 21.001 et seq. Plaintiff alleges that he was discriminated against on the basis of race (white) and that his rights under the First and Fourteenth Amendments to the United States constitution were violated. Defendants filed a motion for summary judgment on November 6, 2000 (D.E. 25) to which plaintiff responded on November 27, 2000 (D.E. 29). Defendants replied to plaintiff's response on December 15, 2000 (D.E. 30). Plaintiff submitted a supplemental response on January 24, 2001 (D.E. 31).

### BACKGROUND

This recitation of facts is based upon the presented materials viewed in the light most favorable to plaintiff. Plaintiff was hired to work as a patrol officer with the TAMUK University Police Department (UPD) on March 1, 1992 (D.E. 29, Ex. 5, pp. 497-499) and

continued to work there until he was terminated on June 18, 1999 (D.E. 29, Ex. 5, p. 431). Plaintiff is Anglo, and defendant Garcia, an Hispanic male, was the Chief of the UPD from September 1, 1994 until his retirement on August 31, 1999. Defendant Bazan, an Hispanic male, was a sergeant with the UPD during the relevant time period (D.E. 29, Ex. 1, p. 1; D.E. 25, Ex. 1, p. 1). During plaintiff's employment with the UPD, he received pay increases, was given generally positive evaluations and was honored as officer of the year (D.E. 29, Ex. 1, pp. 1-2).

In 1998 and 1999 plaintiff applied for a promotion to the position of sergeant, but was never promoted. Salvador Franco, an Hispanic male, was promoted to sergeant in 1998 and Pedro Cavazos, an Hispanic male, was promoted to sergeant in 1999 (D.E. 25, Ex. 1, pp. 3-4). As part of the promotion process, all candidates appeared before a promotion board and were asked a series of questions relating to the position of sergeant. In 1998, all three members of the promotion board were Hispanic and in 1999 two of the members of the promotion board were Hispanic and one was African American. In both instances the Hispanic candidate scored higher than plaintiff on the promotion board evaluations (D.E. 25, Ex. 1, p. 3, App. E-1, E-2, F-1, F-2).

Plaintiff was terminated from the position of patrol officer in June 1999. The reasons given for his termination were that on April 1, 1999 and April 21, 1999 he was reprimanded for confiscation of items without a warrant and was placed on probation for six months. And then on May 16, 1999 he left the dispatcher's post to complete some paperwork in the back room, leaving the 911 office unattended (D.E. 29, Ex. 5, p. 357). Plaintiff disputed his

employer's description of all these events and asserted that he did nothing wrong and that other officers had engaged in similar conduct without being disciplined in any way.

Plaintiff asserts that he did not receive the promotions he sought because he is Anglo and that when he filed an EEOC complaint his employer retaliated against him by terminating him. In addition, he argues that defendants retaliated against him for speaking out on issues of public concern.

## APPLICABLE LAW

### A.   Summary Judgment Standard

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552; Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992). The controverted

evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188 (1990). Summary judgment is mandated if, after adequate time for discovery and upon motion, the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. Celotex Corp., 477 U.S. at 322, 06 S. Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 322-23, 106 S. Ct. at 2552.

**B.     Title VII Claim[1]**

    **1. Failure to Promote**

Plaintiff argues that he was not chosen for the position of sergeant because he is Anglo, in violation of Title VII of the Civil Rights Act of 1964. Under Title VII, it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

---

[1] To the extent defendants argue that Bazan and Garcia cannot be held individually liable under Title VII, they are correct. "Only 'employers,' not individuals acting in their individual capacity who do not otherwise meet the definition of 'employers,' can be liable under title VII." Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir. 1994), cert. denied, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994). Accordingly, the only defendant to the Title VII action is TAMUK.
    To the extent TAMUK argues it has 11th Amendment immunity from Title VII actions, they are incorrect. "The defendant University, as a state government agency which "affects commerce" within the meaning of 42 U.S.C. § 2000e(b), is an employer subject to coverage of the Act from March 24, 1972." Carpenter v. Stephen F. Austin University, 706 F.2d 608, 612 (5th Cir. 1983).

employment, because of such individual's race, color, religion, sex or national origin. 42 U.S.C.A. § 2000e-2. The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a protected group[2]; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) the position was filled by someone outside the protected class, or after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. McDonnell Douglas Corporation v. Green, 411 U.S. 792, 803, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1971); Blow v. City of San Antonio, ___ F.3d ___, 2001 WL 726 (No. 99-50856 January 8, 2001) (slip. op.).

After the employee makes out a prima facie case of racial discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Id. Although the employer has the burden of producing evidence to rebut the employee's prima facie case, the ultimate burden of proving discrimination never shifts from the employee. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). If the employer meets the burden of producing evidence of a non-discriminatory reason for its actions, the shifted burden of production becomes irrelevant and the inference of discrimination raised by the plaintiff's prima facie case

---

[2]White employees may also bring race discrimination claims. "An employer's decision to terminate an individual's employment violates Title VII when that decision was based on race, whether that race be white or black." Byers v. Dallas Morning News, 209 F.3d 419, 425 (5th Cir. 2000)(citations omitted).

drops from the case. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 246, 253-257, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981).

The focus then shifts to the ultimate question of whether the defendant intentionally discriminated against the plaintiff. Grimes v. Tx. Dept. of Mental Health, 102 F.3d 137, 140 (5th Cir. 1996), citing Hicks, 509 U.S. 502, 510-511, 113 S.Ct. 2742, 2749, 124 L.Ed.2d 407 (1993). Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence and may do so by demonstrating that a defendant's articulated non-discriminatory reason was pretextual. Grimes, 102 F.3d at 141 (citations omitted). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may, but does not necessarily, permit the trier of fact to conclude that the employer unlawfully discriminated. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id., 530 U.S. at ___, 120 S.Ct. at 2109.

In this case plaintiff is a member of a protected class and he was passed over twice for a position for which he was qualified. In both cases he was not chosen for the job and an Hispanic was promoted to the position. Accordingly, plaintiff has made out a prima facie case of employment discrimination on his promotion claims.

Defendant TAMUK argues that plaintiff was passed over for the position of sergeant in 1998 and 1999 because he scored lower during the interviews than the candidates selected for the positions (Aff. of Humberto Garcia, D.E. 25, Ex. 1, pp. 3-4). Plaintiff responds that Salvador Franco, who was chosen for the sergeant position in 1998, had less experience than plaintiff in working at a university police department (Connor Depo., D.E. 29, Ex. 2, p. 133). Plaintiff also points out that no Anglo has held a supervisory position in the UPD for the last 10 years and that no Anglos sat on the promotion board (Garcia Depo., D.E. 29, Ex. 3, pp. 91-95). In addition, plaintiff offers evidence that Sergeant Cavazos, who was promoted instead of plaintiff in 1999, had some sort of criminal history (Nash Depo., D.E. 29, Ex. 7, p. 39). Plaintiff offers additional evidence that Hispanic officers discussed job-related matters in Spanish and that it limited the non-Spanish speakers in their ability to participate in UPD business (Nash Depo., D.E. 29, Ex. 7, pp. 19-20).

Summary judgment evidence indicates that fact issues exist regarding the reason or reasons plaintiff was not promoted, despite his qualifications. Accordingly, summary judgment is not appropriate on plaintiff's Title VII promotion claims.

## 2. Termination

Plaintiff asserts that he was terminated because of his race and in retaliation for having filed a Title VII complaint, but defendants maintain that plaintiff was terminated because he made serious mistakes and violated UPD policies. Plaintiff maintains that Hispanic officers also made mistakes but were not reprimanded for them. In claims involving violation of work rules, a plaintiff may establish a Title VII case by showing either that he did not violate the rule, or that if he did, other employees not in the protected class engaged in similar conduct

were not punished in a similar fashion. Mayberry, 55 F.3d at 1090 (citing Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980)).

The reasons given for plaintiff's termination involved three separate incidents. In the first incident on April 1, 1999 plaintiff was reprimanded for confiscating items without a warrant (D.E. 19, Ex. 5, p. 432). Plaintiff and another officer, Luis Everett, who is Hispanic, (Nash Depo., D.E. 29, Ex. 7, p. 31) were called to a dormitory room after the dormitory director found drug paraphernalia in a student's room. In addition to the paraphernalia, the officers saw ammunition and a car stereo. Because there had been several car burglaries on campus, Officer Everett called Sgt. Hiram Perez and asked if they should take the car stereo along with the paraphernalia and ammunition and Sgt. Perez authorized them to do so. The two officers brought the items in and plaintiff started to inventory the items as Officer Everett started to look at cases involving stolen stereos to see if the stereo they seized had been stolen. The officers determined that the stereo was not stolen. Sgt. Perez and Officer Everett left the office and when they returned, all of the items were gone. In his report, Sgt. Perez wrote that he did not think about the stereo again until someone questioned the legality of the search (Sgt. Perez' rept.; D.E. 29, Ex. 5, p. 639). Plaintiff tagged the items, put them in his locker and then turned them over to Lt. Sandra Jefferson. He did not put the items in the evidence locker because Sgt. Perez had the key to the locker and he had left the building (Connor Depo., D.E. 29, Ex. 2, pp. 117-120).

Regardless of whether the seizure was unwarranted, the record indicates that Officer Everett and Sgt. Perez, both Hispanic, were equally involved in the seizure but were not punished in any way. Accordingly, insofar as the seizure of the stereo was given as a reason

for plaintiff's termination, a fact issue exists regarding whether the reason was a pretext for plaintiff's termination.

The second incident involved a student reporting that two compact discs were stolen and the plaintiff's efforts to recover the items. On the same day they were reported missing, the compact discs were replaced by two students accused of taking them and the student who complained did not wish to pursue the matter further. Plaintiff wrote a detailed incident report dated April 21, 1999 (D.E. 29, Ex. 5, pp. 444-446). Plaintiff received a letter of reprimand from Sgt. Franco on April 26, 1999 in which Sgt. Franco accused him of having refused to file a report on the April 21 incident (D.E. 29, Ex. 5, p. 440). On May 5, 1999 plaintiff received an official reprimand for his "refusal of an order from [his] supervisor to initiate a theft report" about the missing compact discs (D.E. 29, Ex. 5, p. 437) It is unclear why plaintiff was reprimanded for failing to write a report when a report is included in the record. Also, plaintiff submitted a reply to the reprimand in which he said that Sgt. Bazan had told him not to write a report at one point, but that when he did write the report, he immediately handed it in to Sgt. Franco.

The third reason given for plaintiff's termination was that he had left the dispatcher's post to complete paperwork in a back room (D.E. 29, Ex. 5, p. 432). Plaintiff and Officer Everett were trading two-hour shifts of patrolling and working in the dispatch office. When it was plaintiff's turn to answer the telephone and work in the dispatch office, Officer Everett left on patrol but returned to the office 20 minutes later when he realized that he had forgotten something. At that time Officer Everett returned to the office and noticed that plaintiff was in

a back room typing paperwork and not at the desk where he could answer the telephone (Everett's report, D.E. 29, Ex. 5, p. 645).

Molly Sanchez, a dispatcher, testified that everyone who works at the dispatch desk leaves the area occasionally, although she added that she usually takes a portable radio with her when she leaves the desk (Sanchez Depo., D.E. 29, Ex. 6, p. 10). Sgt. Bazan testified that he once worked a shift by himself and that at one point he had to leave to leave the dispatch building to open a door. He said that he was "talked to" about leaving and was told that he would be written up for it, but the records did not reflect that he ever received a written reprimand (Bazan Depo., D.E. 29, Ex. 4, pp. 27-30). Defendant Garcia, plaintiff's supervisor at the time of the incident, testified that plaintiff violated no written policy or procedure by leaving the desk during his shift (Garcia Depo., D.E. 29, Ex.3, pp. 82-83). Officer Nash testified that discipline within the department was inconsistent. "[S]ome people do one thing and nothing is done about it. Another person does the same thing and then something is done about it." Officer Nash did not offer a reason for the difference in discipline (Nash Depo., D.E. 29, Ex. 7, pp. 30-31).

Plaintiff has presented evidence that he was punished harshly and ultimately discharged for engaging in behavior similar to that of other UPD employees and he argues that the differences are race based. Because a fact issue exists on the question of whether plaintiff was the subject of racial discrimination, summary judgment is denied on this issue.

### 3. Title VII Retaliation

Plaintiff also claims that he was terminated in retaliation for filing a Title VII claim. A plaintiff must show three things to establish a prima facie case of retaliation: (1) that he

engaged in an activity protected by Title VII; (2) that an adverse employment action followed, and that there was a causal connection between the activity and the adverse action. Collins v. Baptist Memorial Geriatric Center, 937 F.2d 190, 193 (5th Cir. 1991)(citing Jones v. Flagship International, 793 F.2d 714, 724 (5th Cir. 1987), cert. denied, 502 U.S. 1072, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992). The plaintiff need not establish that his protected activity was the sole factor motivating his termination, but must show that "but for" the protected activity he would not have been subjected to the action which he claims. Id. (citing Jack v. Texaco Research Center, 743 F.2d 1129, 1131 (5th Cir. 1984).

Once the prima facie case is established, the burden of producing some non-discriminatory reason for the termination falls upon the defendant. The employee then assumes the burden of showing that the reasons given were a pretext for retaliation. Shirley v. Chrysler First, Inc., 970 F.2d 39 (5th Cir. 1992)(citing EEOC v. J.M. Huber Corp., 927 F.2d 1322, 1326 (5th Cir. 1991)).

In this case, plaintiff filed an EEOC charge on May 10, 1999 and was given notice of his termination on June 4, 1999, to be effective June 18, 1999 (D.E. 29, Ex. 5, pp. 431-432, 436). As discussed above, fact issues exist regarding the reasons given for plaintiff's termination. The issue of other Hispanic officers who violated rules having been treated more favorably than plaintiff coupled with his termination coming within one month of his filing an EEOC complaint raises a fact question regarding retaliation.

C.  **42 U.S.C. § 1983 Claims**[3]

---

[3] To the extent plaintiff is suing defendants Garcia and Bazan for damages in their official capacity, his claims are barred by the Eleventh Amendment. Pennhurst State School

11

Respondents claim defendants Garcia and Bazan are entitled to qualified immunity from plaintiff's § 1983 claims. In order to prevail on a claim against defendants Garcia and Bazan in their individual capacities, plaintiff must show that the defendants' conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1983). To determine whether a defendant's conduct was reasonable, the court must look to the law in effect at the time of the alleged violation. Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993).

The threshold inquiry in the analysis of a qualified immunity defense is to determine whether plaintiff has alleged violation of a clearly established constitutional right. The second inquiry is to determine whether the defendant's actions were objectively reasonable. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 927 (5th Cir. 1992), (citing Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 1792, 114 L.Ed. 2d 277 (1991)).

**(1) First Amendment Claim**

A public employee may not suffer an adverse employment action for exercising his or her right to free speech under the First Amendment, even though only certain speech is protected. Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995); Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997), cert. denied, 118 S.Ct. 603, 139 L.Ed.2d 491 (1997). Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote,

---

and Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed. 2d 67 (1984); Ganther v. Ingle, 75 F.3d 207 (5th Cir. 1996). The individual defendants are liable, if at all, in their individual capacities.

12

and reprimands. Harrington, 118 F.3d at 365 (citing Pierce v. Texas Dep't. of Crim. Justice Inst. Div., 37 F.3d 1146, 1149 (5th Cir. 1994)).

The Fifth Circuit has established a three-part test to determine whether particular speech by a public employee is protected. First, the speech must have involved a matter of public concern. Second, the public employee's interest in commenting on matters of public concern must outweigh the public employer's interest in promoting efficiency. Third, the employee's speech must have motivated the decision to take the adverse employment action. Fowler, 68 F.3d at 126; Lukan v. North Forest ISD, 183 F.3d 342, 346 (5th Cir. 1999), cert. denied, 120 S.Ct. 1420, 146 L.Ed.2d 313 (2000).

In this case, plaintiff claims to have spoken out about problems with UPD radios, campus safety issues, lack of procedures within the UPD, a request made of plaintiff to change a report and another officer drinking on the job. He asserts that these were matters of public concern. However, with one exception, case law indicates that these matters fall into the realm of private speech and are not protected by the First Amendment.

Whether speech involves a matter of public concern "must be determined by the content, form, and context of a given statement, as revealed by the whole record." Kirkland v. Northside Independent School Dist., 890 F.2d 794, 798 (5th Cir. 1989)(citing Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)), cert. denied, 496 U.S. 926, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990). "To rise to the level of public concern, the Plaintiffs must speak primarily in their roles as citizens rather than as employees addressing matters only of personal concern." Harris v. Victoria Independent School Dist., 168 F.3d

13

216, 221 (5th Cir. 1999), cert. denied, 528 U.S. 1022, 120 S.Ct. 533, 145 L.Ed.2d 413 (1999).

Examples of matters that have been held to be matters of public concern include commenting favorably upon a presidential assassination attempt, a school teacher publicly protesting the school board's allocation of resources between athletics and academics, a teacher discussing a school's alleged racially discriminatory policy in a private conversation with the principal, criticizing the special attention paid by the police to a wealthy neighborhood, the implementation of a federally funded reading program, the quality of nursing care provided inmates and the adequacy of a fire department's level of manpower.  Kirkland, 890 F.2d at 798, n. 10 (citations omitted).  Examples of matters that have been held to be private concerns include criticizing morale problems or transfer policies at the district attorney's office, criticizing the performance of co-employees and supervisors, and protesting an unfavorable job evaluation.  Id.

The bulk of plaintiff's complaints regarded his perception of how he was being treated within the department and were not matters of public concern.  His thought his supervisors did not respond quickly enough to his complaints about his radio, although they did replace the batteries after he and another officer asked several times (Connor Aff., D.E. 29, Ex. 1, p. 4).  Complaints about a lack of procedures within the UPD and his being asked to change a report are clearly internal matters.  And while complaints about "campus safety issues" might have raised public concern, the subject of the complaints does not appear in the record.

However, at least two circuit courts have found that complaints about a coworker drinking on the job are matters of public concern.  Ohse v. Hughes, 816 F.2d 1144 (7th Cir.

1987) *rev'd. on other grounds*, 863 F.2d 22 (7th Cir. 1988); Starrett v. Wadley, 876 F.2d 808, 812 (10th Cir. 1989). Defendant argues that plaintiff's complaints against the officer drinking on duty was not protected speech and cites Havekost v. U.S. Dept. of Navy, 925 F.2d 316 (9th Cir. 1991). However, the plaintiff in Havekost was not complaining about anyone drinking on the job but made several general complaints about her job conditions. Id., 925 F.2d at 317. Absent any authority to the contrary, plaintiff's complaints about his coworker drinking on the job are a matter of public concern.

"It is well established that a state may not discharge, discipline, or otherwise retaliate against a public employee for exercising his First Amendment right to free speech." Anderson v. Pasadena Independent School Dist., 184 F.3d 439, 444 (5th Cir., 1999). Because the law is well established, a reasonable public official should know that he cannot retaliate against an employee for exercising his First Amendment rights. Plaintiff presented evidence indicating a fact issue exists regarding whether he was terminated in violation of his First Amendment rights and summary judgment is denied on this issue.

Insofar as summary judgment is inappropriate regarding plaintiff's First Amendment claim, he has made out a cause of action only against defendant Garcia and not against defendant Bazan. It is defendant Garcia who recommended plaintiff's termination and arguably had the authority to terminate him[4]. Plaintiff neither argued nor submitted any

---

[4]Defendant Garcia stated in his affidavit that he did not have the authority to terminate any employee, but only to make recommendations regarding termination to one of the vice-presidents of the university (D.E. 25, Ex. 1, p. 2). However, during his deposition he testified the he had the authority to hire and terminate employees (D.E. 29, Ex. 3, p. 40). At the very least, a fact question exists on this issue.

15

evidence that defendant Bazan was responsible for his termination in violation of his First Amendment rights. Accordingly, plaintiff's §1983 claims against defendant Bazan are dismissed.

### (2) Other § 1983 Causes of Action

In addition to violation of his right to freedom of speech, plaintiff claims that he was deprived of other fundamental rights and privileges and he sets out a laundry list of perceived wrongs during his employment with TAMUK (See Pl.'s Orig. Complaint, D.E. 1). However, in his response to the motion for summary judgment, he fails to point to any evidence of any further violation of clearly established constitutional rights. For this reason, defendants are granted summary judgment on plaintiff's other §1983 causes of action.

## CONCLUSION

For the reasons discussed above, defendants' motion for summary judgment (D.E. 25) is GRANTED in part and DENIED in part. Specifically, plaintiff is allowed to proceed on his Title VII claims of employment discrimination against TAMUK. Plaintiff is also allowed to proceed on his claims under the Texas Labor Code. In addition, plaintiff is allowed to proceed on his § 1983 claim against Defendant Garcia for violation of his First Amendment rights. All other claims of constitutional violations, including all of plaintiff's claims against Defendant Bazan, are DISMISSED with prejudice.

ORDERED this 29 day of January, 2001.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE