UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

FEB 2 8 2001

MICHAEL N. MILBY CLERK

| | | |
|---|---|---|
| JOSEPH K. CONNOR | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. C-00-69 |
| | § | |
| TEXAS A&M UNIVERSITY - KINGSVILLE; | § | **JURY TRIAL REQUESTED** |
| HUMBERTO GARCIA, Individually and in | § | |
| His Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in His Official Capacity | § | |
| | § | |
| Defendants. | § | |

## JOINT PRETRIAL ORDER

1.    Appearance of Counsel.

Counsel for Plaintiff:

Gay E. Gilson
Law Office of Gay E. Gilson
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412
Telephone: (512) 814-0573
Facsimile: (512) 814-0674
SBN 00784131/Fed.I.D. 16385
ATTORNEY IN CHARGE

John E. Schulman
Law Office of John E. Schulman, P.C.
4555 W. Lover's Lane
Dallas, Texas 75209
(214) 361-2580
SBN 17833500

31.

Counsel for Defendants:

Jose Rangel
Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
*

2.      Statement of the Case.

Plaintiff, Joseph Connor was hired to work as a patrol officer with the Texas A&M

University - Kingsville University Police Department on March 1, 1992 and continued to work there

until he was terminated on June 18, 1999. Plaintiff is an Anglo, and Defendant, Humberto Garcia,

a Hispanic male, was the Chief of the University Police Department from September 1, 1994 until his

retirement on August 31, 1999. Robert Bazan was a sergeant with the University Police Department.

During Plaintiff's employment with the University Police Department, he received pay increases, was

given generally positive evaluations and was honored as officer of the year.

In 1998 and 1999, Plaintiff applied for a promotion to the position of sergeant, but was never

promoted. Salvador Franco, a Hispanic male, was promoted to sergeant in 1998 and Pedro Cavazos,

a Hispanic male, was promoted to sergeant in 1999. As part of the promotion process, all candidates

appeared before a promotion board and were asked a series of questions relating to the position of

sergeant. In 1998, all three members of the promotion board were Hispanic and in 1999 two of the

members of the promotion board were Hispanic and one was African American. In both instances,

the Hispanic candidate scored higher than Plaintiff on the promotion board evaluations.

Plaintiff was terminated from the position of patrol officer in June 1999. The reasons given

for his termination were that on April 1, 1999 and April 21, 1999 he was reprimanded for confiscation

of items without a warrant and was placed on probation for six months. And then on May 16, 1999

2

CutePDF - www.testco.com

he left the dispatcher's post to complete some paperwork in the back room, leaving the 911 office unattended. Plaintiff disputes the employer's description of all these events and asserts that he did nothing wrong and that other officers had engaged in similar conduct without being disciplined in any way.

Plaintiff asserts that he did not receive the promotions he sought because he is Anglo and that when he filed an EEOC complaint his employer retaliated against him by terminating him. In addition, Plaintiff argues that Defendants retaliated against him for speaking out on issues of public concern on the matter of a co-worker drinking on the job and **his good-faith reporting of race/national origin discrimination in the operation of a public agency**.

  3. Jurisidiction. This Court has jurisdiction over this action by reason of 28 U.S.C. 1331 and 1343, in that Plaintiff, pursuant to Title VII, seeks to redress racial discrimination and retaliation for protected activity he experienced at the hands of defendants. This Court has jurisdiction over this action by reason of 42 U.S.C. §1983, in that Plaintiff, pursuant to 28 U.S.C. §1343(3), seek redress for deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States of America. Venue is proper pursuant to 28 U.S.C. §1391 because the acts complained of primarily occurred within the geographical boundaries of the United States District Court for the Southern District of Texas, Corpus Christi, Division.

4. Motions. The parties are filing Motions in Limine with this document and may be able to agree on their motions pending the Final Pretrial Conference on Friday, March 2, 2001.

5. Contentions of the Parties.

  Plaintiff contends the following:

  1. Defendant, Humberto Garcia deprived Plaintiff of the fundamental rights and

3

privileges as guaranteed by 42 U.S.C. §1983 and by the First Amendments to the United States Constitution.

2.    Defendants violated Plaintiff's federally protected rights by treating him disparately in terms and conditions of employment when compared to non-Anglos. Further, Defendants engaged in extensive retaliation in response to Plaintiff's opposition to disparate and different treatment by Defendants. Both of these in violation of Title VII of the Civil Rights Act of 1964, as amended.

3.    Plaintiff continually spoke out about matters of public concern especially in regard to public safety issues in that a coworker, who was a officer of the University Police Department, was drinking on the job. **Further, Plaintiff spoke out against and made a good faith report about race/national origin discrimination in the operation of a public agency which is a matter of public concern.** The adverse employment actions taken against Plaintiff, including his termination, by Defendants were responses to Plaintiff's protected speech. By their adverse employment actions against Plaintiff, including Plaintiff's discharge, Defendants arbitrarily and capriciously infringed upon Plaintiff's right to freedom of speech authorized by the First Amendment to the United States Constitution.

4.    The Defendants are liable to Joseph Connor for the following: Actual damages plus interest; Compensatory damages arising from the physical and emotional injury, pain, suffering, loss of reputation and humiliation plaintiff suffered as a result of defendant misconduct; Punitive damages as allowed by law; Exemplary damages as allowed by law; Injunctive relief of an affirmative nature, providing make whole economic relief and reinstatement; Prejudgment interest as allowed by law; Post-judgment interest as allowed by law; Attorney's fees; Court costs; and such other legal or equitable relief ultimately justified by the proof of this case.

4

Defendant contends the following:

6.     Admissions of Fact.

   1.     Plaintiff is an Anglo male.

   2.     Humberto Garcia is a Hispanic male.(Deposition of Humberto Garcia).

   3.     Robert Bazan is a Hispanic male.  (Deposition of Robert Bazan).

   4.     Humberto Garcia was Police Chief of Texas A&M University - Kingsville Police
Department during Plaintiff's tenure. ( Deposition of Humberto Garcia).

   5.     Robert Bazan was a Sergeant with the Texas A&M University - Kingsville
Police Department during Plaintiff's tenure.  (Deposition of Robert Bazan).

   6.     Joseph Connor was employed with Texas A&M University - Kingsville Police
Department as an officer for over six years at the time of his termination.

   7.     Joseph Connor was honored as the Officer of the Year during his tenure with Texas
A&M University - Kingsville.

   8.     Humberto Garcia never took a Hispanic officers' traffic ticket book away.
(Deposition of Humberto M. Garcia, p. 102, lines 17-25.)

   9.     Humberto Garcia never took a Black officer's traffic ticket book away.(Deposition
of Humberto M. Garcia, p. 102, lines 17-25.)

   10.    In February 1997, it was declared that the policy manual for the university police
department was not valid by Humberto Garcia.  (Plaintiff's Exhibit 6 - 02/06/97 Memo from
Defendant Garcia declaring policies void).

   11.    The University Police Department did not have a policy regarding discrimination or

5

equal employment opportunities during Humberto Garcia's tenure   . (Exhibit 3 - Deposition of Humberto Garcia, p. 52, lines 13-16.)

12.     Humberto Garcia was a supervisor with the authority to hire, fire, promote and demote. (Exhibit 3 - Deposition of Humberto Garcia, p. 40, lines 17-24; Exhibit 15 - Memorandum "I have approved the Promotion").

13.     Humberto Garcia did not read the Texas A&M University's policy regarding Equal Employment Opportunities. (Exhibit 3 - Deposition of Humberto Garcia, p. 40, lines 2-5, p. 41, lines 8-15).

14.     Humberto Garcia testified that he never disciplined a Hispanic employee or Black employee for leaving work early or coming in late. (Exhibit 3 - Deposition of Humberto Garcia, p. 103, lines 1-12).

15.     Joseph Connor sent a memorandum to Steven Crandall on 11/02/98, the Vice President for Finance and Administration, about the disparate treatment he was experiencing regarding leave. (Exhibit 17 - 11/2/98 Crandall Memorandum Regarding Leave).

16.     Joseph Connor verbally voiced his concerns about Sargent Quinones drinking and driving to his residence in a university vehicle while drinking to Humberto Garcia.  (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph K. Connor; Exhibit 7 - Deposition of Robert Nash, p. 44, lines 9-25; Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph K. Connor; Exhibit 3 - Deposition of Humberto Garcia, p. 104, lines 10-13).

17.     Chris Florence, an Anglo officer, notified Sargent Perez that there were problems with Joseph Connor's officer radio.  (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph K. Connor; Exhibit 7 - Deposition of Robert Nash, Jr., pages 42-43, lines 5-

6

10; Exhibit 4 - Deposition of Robert Bazan, pages 49-50, lines 18-6; Exhibit 5 - Plaintiff's Deposition Exhibits, Plaintiff's Exhibit 8, Memorandum regarding portable radios).

18.     Humberto Garcia called Joseph Connor a bastard in Spanish a few weeks before he was terminated. (Exhibit 9 - Deposition of Molly Sanchez, p. 6, lines 2-24).

19.     Joseph Connor requested that he train officers in first aid and CPR. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph K. Connor; Exhibit 3 - Deposition of Humberto Garcia, Pages 105 - 107, lines 20- 1).

20.     Prior to 1998, the University Police Department did not have a promotion board, Humberto Garcia made the sole decisions regarding promotion. (Exhibit 3 - Deposition of Humberto Garcia, p. 91, lines 6-15; Exhibit 4 - Deposition of Robert Bazan).

21.     After 1998, a promotion board, appointed by Humberto Garcia, made decisions regarding promotions. (Exhibit 3 - Deposition of Humberto Garcia, p. 92, lines 2-4; Exhibit 4 - Deposition of Robert Bazan).

22.     The promotion boards for 1998 and 1999 were made up of all non-Anglos. (Exhibit 3 - Deposition of Humberto Garcia, pages 92-93, lines 8-11; Exhibit 4 - Deposition of Robert Bazan).

23.      No Anglo has held any supervisory position with the TAMUK Police Department for at least the last ten years. (Exhibit 3 - Deposition of Humberto Garcia, p. 95, lines 21-23; Exhibit 4 - Deposition of Robert Bazan; Exhibit 7 - Deposition of Robert Nash, Jr.).

24.     Humberto Garcia did not possess a bachelor's degree. (Exhibit 3 - Deposition of Humberto Garcia, pages 95-96, lines 24-6).

25.     Humberto Garcia is unaware of the requirement that the Chief of Police at Texas A&M University - Kingsville hold a bachelor's degree. (Exhibit 3 - Deposition of Humberto Garcia,

7

p. 96, lines 1-6).

26.     A bachelor's degree is a "necessary qualification" for the position of Director/Chief of Police. (Exhibit 5 - Plaintiff's Deposition Exhibits, Plaintiff's Exhibit 7, Job description for Director/Chief of Police).

27.     Humberto Garcia signed the job description for Director/Chief of Police in 1997, along with Steven Crandall, VPFA, despite Defendant Garcia not possessing a "necessary" qualification for the position. (Exhibit 5 - Plaintiff's Deposition Exhibits, Plaintiff's Exhibit 7, Job description for Director/Chief of Police).

28.     Humberto Garcia refused to consider education as a qualification in hiring and promotions. (Exhibit 3 - Deposition of Humberto Garcia, p.90, lines 16-19).

29.     The Texas A&M University System Regulations state in 33.99.01, Section 5: "Employment decisions will be based on job-related factors such as education...license/certification requirement....Race, sex, religious affiliation, or other protected status or classification shall not be the basis for a hiring decision. (Exhibit 10 - TAMU System Regulations - Employment Practices).

30.     Humberto Garcia didn't receive training as far as discrimination in the workplace while he was employed with the A&M system. (Exhibit 3 - Deposition of Humberto Garcia, p. 40, lines 2-5; Exhibit 5 - Plaintiff's Deposition Exhibits, Plaintiff's Exhibit 1, Humberto Garcia's personnel file).

31.     In 1998, Sargent Franco, a Hispanic male, was promoted. (Exhibit 5 - Plaintiff's Deposition Exhibits).

32.     Sargent Franco was made the fire arms safety officer even though he had never been to school for such training. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of

8

Humberto Garcia, p. 2-15).

33.     Joseph Connor was told by Humberto Garcia that he would be sent to fire arms instructor school. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Humberto Garcia, p. 2-15).

34.     Joseph Connor was not sent to fire arms instructor school by the Texas A&M University Police Department. (Exhibit 1 - Affidavit of Joseph K. Connor).

35.     The Promotion Board had no policies and procedures. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's Deposition Exhibits; Exhibit 7 - Deposition of Robert Nash, Jr.)

36.     In March 1999, a memo was circulated that all supervisors would be present at the promotion board. (Exhibit 1 - Affidavit of Joseph K. Connor, Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's Deposition Exhibits; Exhibit 7 - Deposition of Robert Nash, Jr.). However, the promotion board met without all supervisors present. (Exhibit 1 - Affidavit of Joseph K. Connor, Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's Deposition Exhibits; Exhibit 7 - Deposition of Robert Nash, Jr.).

37.     At all times during Joseph Connor's employment with Defendants, he possessed the required qualifications for promotion as set out by the Texas A&M University System. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 5 - Plaintiff's Deposition Exhibits).

38.     On several occasions throughout Plaintiff's employment with Defendants, Humberto Garcia called Plaintiff a liar. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia, p. 110, lines 13-8).

39.     Joseph Connor's prior supervisory experience was not considered for his potential promotions. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's Deposition Exhibits).

40.     Supervisors frequently spoke Spanish. (Exhibit 7 - Deposition of Robert Nash, Jr., pages 17, 18, 19, 20, lines 20 - 10; Exhibit 4 - Deposition of Robert Bazan, pages 60, 61, 62, 63, lines 25-25; Exhibit 9 - Deposition of Molly Sanchez, p. 10, lines 10-13).

41.     When the Sergeants were together it was easier for them to communicate in Spanish. (Exhibit 4 - Deposition of Robert Bazan, p. 63, lines 8-19).

42.     When the Sergeants would speak in Spanish, that would include talking about the job.   (Exhibit 4 - Deposition of Robert Bazan, p. 63, lines 23-25).

43.     At the time of Joseph Connor's termination, he was the only Anglo employee of the University Police Department. (Exhibit 7 - Deposition of Robert Nash, Jr., p. 17, lines 8-13).

44.     At the time of Joseph Connor's termination there were about 15 patrolmen and five or six other employees such as dispatchers and office help. (Exhibit 7 - Deposition of Robert Nash, p. 17, lines 14-19).

45.     Sargent Bazan left the University Police Department building, when he was the only person on duty, and was not terminated.   (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's

10

Deposition Exhibits; Exhibit 7 - Deposition of Robert Nash, Jr.; Exhibit 9 - Deposition of Molly Sanchez).

69.    Humberto Garcia doesn't know if Joseph Connor received a copy of any write-ups he received in April, May or June 1999. (Exhibit 3 - Deposition of Humberto Garcia, p. 60, lines 18-20).

70.    Humberto Garcia cannot cite laws, regulations or other standards which Joseph Connor violated which led to his termination. (Exhibit 3 - Deposition of Humberto Garcia, p. 77, lines 12-15, p. 81, lines 18-25, p. 82, lines 1-5).

71.    Defendants are not sure who replaced Plaintiff. (Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 7 - Deposition of Robert Nash, Jr.).

72.    On April 1, 1999, Sargent Hiram Perez told officer #110 to ask Mr. Knapp if it was okay with him (Knapp) to bring in the stereo to check against the cases U.P.D. had. The items were removed after permission was given by Mr. Knapp and brought to U.P.D....." (Exhibit 5 - Plaintiff's Deposition Exhibits - Plaintiff's Exhibit 3).

73.    Prior to Joseph Connor being written up for confiscating the stereo on April 1, 1999, Humberto Garcia did not speak to Sergeant Hiram Perez about the incident. (Exhibit 1 - Affidavit of Joseph K. Connor).  At the time, Sergeant Perez was Joseph Connor's supervisor. (Exhibit 1 - Affidavit of Joseph K. Connor).

74.    Lieutenant Jefferson, a black female, used the copy machine for personal use and was not disciplined.

75.    Sergeant Longoria and Defendant Sergeant Robert Bazan took University property for their personal use and were not disciplined.  (Exhibit 7 - Deposition of Robert Nash, Jr., pages

11

51-52, lines 3-19). Humberto Garcia was aware of these activities. (Exhibit 7 - Deposition of Robert Nash, Jr., page 52, lines 9-19).

76.     The University Police Department does not have procedures for tagging and storing evidence. (Exhibit 1 - Affidavit of Joseph Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 7 - Deposition of Robert Nash, Jr.).

77.     Humberto Garcia stated that Joseph Connor would never make sergeant as long as he was there. (Exhibit 7 - Deposition of Robert Nash, Jr., p. 14, lines 7-22)..

7.     Contested Issues of Fact.

1.     Whether Defendant, Humberto Garcia deprived Plaintiff of the fundamental rights and privileges as guaranteed by 42 U.S.C. §1983 and by the First Amendments to the United States Constitution.

2.     Whether Defendants violated Plaintiff's federally protected rights by treating him disparately in terms and conditions of employment when compared to non-Anglos. Further, whether Defendants engaged in extensive retaliation in response to Plaintiff's opposition to disparate and different treatment by Defendants. Both of these in violation of Title VII of the Civil Rights Act of 1964, as amended.

3.     Whether Plaintiff continually spoke out about matters of public concern especially in regard to public safety issues in that a coworker, who was a officer of the University Police Department, was drinking on the job and whether the adverse employment actions taken against Plaintiff, including his termination, by Defendants were responses to Plaintiff's protected speech.

4.     Whether the Defendants are liable to Joseph Connor for the following: Actual

12

damages plus interest; Compensatory damages arising from the physical and emotional injury, pain, suffering, loss of reputation and humiliation plaintiff suffered as a result of defendant misconduct; Punitive damages as allowed by law; Exemplary damages as allowed by law; Injunctive relief of an affirmative nature, providing make whole economic relief and reinstatement; Prejudgment interest as allowed by law; Post-judgment interest as allowed by law; Attorney's fees; Court costs; and such other legal or equitable relief ultimately justified by the proof of this case.

8.   Agreed Propositions of Law.

   1.   Whether Plaintiff's evidentiary proof will support a judgment for First Amendment retaliation, Title VII discrimination and Title VII retaliation.

   2.   Whether either Defendant can prove that the same adverse action would have been taken against Plaintiff in the absence of protected First Amendment free speech activity.

9.   Contested Propositions of Law.

10.   Exhibits.

   A list of exhibits for each party is attached hereto.

11.   Witnesses.

   A list of witnesses for each party is attached hereto.

12.   Settlement.  All settlement efforts have been exhaused, the case cannot be settled, and that it will have to be tried.

13.   Trial.

   A.   The probably length of trial is 4 to 5 days - depending on the length of the work day.

   B.   At this time, no logistical problems are anticipated.

13

Case 2:00-cv-00069   Document 37   Filed in TXSD on 02/28/2001   Page 14 of 126

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. C-00-69 |
| | § | |
| TEXAS A&M UNIVERSITY - KINGSVILLE; | § | **JURY TRIAL REQUESTED** |
| HUMBERTO GARCIA, Individually and in | § | |
| His Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in His Official Capacity | § | |
| | § | |
| Defendants. | § | |

## JOINT PRETRIAL ORDER

1.    Appearance of Counsel.

Counsel for Plaintiff:

Gay E. Gilson
Law Office of Gay E. Gilson
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412
Telephone: (512) 814-0573
Facsimile: (512) 814-0674
SBN 00784131/Fed.I.D. 16385
ATTORNEY IN CHARGE

John E. Schulman
Law Office of John E. Schulman, P.C.
4555 W. Lover's Lane
Dallas, Texas 75209
(214) 361-2580
SBN 17833500

Case 2:00-cv-00069   Document 37   Filed in TXSD on 02/28/2001   Page 15 of 126

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. C-00-69 |
| | § | |
| TEXAS A&M UNIVERSITY - KINGSVILLE; | § | **JURY TRIAL REQUESTED** |
| HUMBERTO GARCIA, Individually and in | § | |
| His Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in His Official Capacity | § | |
| | § | |
| Defendants. | § | |

## <u>JOINT PRETRIAL ORDER</u>

1.    Appearance of Counsel.

       Counsel for Plaintiff:

       Gay E. Gilson
       Law Office of Gay E. Gilson
       4600 Ocean Drive, Suite 104D
       Corpus Christi, Texas 78412
       Telephone: (512) 814-0573
       Facsimile: (512) 814-0674
       SBN 00784131/Fed.I.D. 16385
       ATTORNEY IN CHARGE

       John E. Schulman
       Law Office of John E. Schulman, P.C.
       4555 W. Lover's Lane
       Dallas, Texas 75209
       (214) 361-2580
       SBN 17833500

Counsel for Defendants:

Jose M. Rangel
Dona G. Hamilton
Assistant Attorneys General
Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
SBN 16543550/Fed. I.D. No. 19859 (Rangel)
SBN 08825600 (Hamilton)

2.      Statement of the Case

Plaintiff, Joseph Connor was hired to work as a patrol officer with the Texas A&M University - Kingsville University Police Department on March 1, 1992 and continued to work there until he was terminated on June 18, 1999. Plaintiff is an Anglo, and Defendant, Humberto Garcia, a Hispanic male, was the Chief of the University Police Department from September 1, 1994 until his retirement on August 31, 1999. Robert Bazan was a sergeant with the University Police Department. During Plaintiff's employment with the University Police Department, he received pay increases, and was honored as officer of the year.

In 1998 and 1999, Plaintiff applied for a promotion to the position of sergeant, but was not promoted. Salvador Franco, an Hispanic male, was promoted to sergeant in 1998 and Pedro Cavazos, an Hispanic male, was promoted to sergeant in 1999.

Plaintiff was terminated from the position of patrol officer in June 1999. Some of the reasons for his termination were that on April 1, 1999, and April 21, 1999, he was reprimanded for confiscation of items without a warrant and was placed on probation for six months. And then on May 16, 1999, he left the dispatcher's post to complete some paperwork in the back room, leaving the 911 office unattended. Plaintiff disputes the employer's description of all these events.

2

Plaintiff asserts that he did not receive the promotions he sought because he is Anglo and that when he filed an EEOC complaint his employer retaliated against him by terminating him. In addition, Plaintiff argues that Defendants retaliated against him for speaking out on issues of public concern on the matter of a co-worker drinking on the job.

3.      Jurisdiction.    This Court has jurisdiction over this action by reason of 28 U.S.C. 1331 and 1343, in that Plaintiff, pursuant to Title VII, seeks to redress racial discrimination and retaliation.    This Court has jurisdiction over this action by reason of 42 U.S.C. §1983, in that Plaintiff, pursuant to 28 U.S.C. §1343(3), seek redress for deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States of America.  Venue is proper pursuant to 28 U.S.C. §1391 because the acts complained of primarily occurred within the geographical boundaries of the United States District Court for the Southern District of Texas, Corpus Christi, Division.

4.      Motions.  The parties are filing Motions in Limine with this document and may be able to agree on their motions pending the Final Pretrial Conference on Friday, March 2, 2001.

5.      Contentions of the Parties.

        Plaintiff contends the following:

        1.      Defendant, Humberto Garcia deprived Plaintiff of the fundamental rights and privileges as guaranteed by 42 U.S.C. §1983 and by the First Amendment to the United States Constitution.

        2.      Defendants violated Plaintiff's federally protected rights by treating him disparately in terms and conditions of employment when compared to non-Anglos.  Further, Defendants engaged in extensive retaliation in response to Plaintiff's opposition to disparate and different

3

Case 2:00-cv-00069   Document 37   Filed in TXSD on 02/28/2001   Page 18 of 126

treatment by Defendants. Both of these in violation of Title VII of the Civil Rights Act of 1964, as amended.

3.     Plaintiff continually spoke out about matters of public concern especially in regard to public safety issues in that a coworker, who was a officer of the University Police Department, was drinking on the job. The adverse employment actions taken against Plaintiff, including his termination, by Defendants were responses to Plaintiff's protected speech. By their adverse employment actions against Plaintiff, including Plaintiff's discharge, Defendants arbitrarily and capriciously infringed upon Plaintiff's right to freedom of speech authorized by the First Amendment to the United States Constitution.

4.     The Defendants are liable to Joseph Connor for the following: Actual damages plus interest; Compensatory damages arising from the physical and emotional injury, pain, suffering, loss of reputation and humiliation plaintiff suffered as a result of defendant misconduct; Punitive damages as allowed by law; Exemplary damages as allowed by law; Injunctive relief of an affirmative nature, providing make whole economic relief and reinstatement; Prejudgment interest as allowed by law; Post-judgment interest as allowed by law; Attorney's fees; Court costs; and such other legal or equitable relief ultimately justified by the proof of this case.

Defendants contend as follows:

Defendants contend that Plaintiff was not promoted to Sergeant in either 1998 or 1999, because he was not the most qualified of the applicants for the position. Defendants further contend that Plaintiff was terminated for numerous legitimate, non-discriminatory, non-retaliatory reasons, including but not limited to failing to carry out his official duties and responsibilities competently, as well as being insubordinate, conducting inappropriate searches, and leaving the dispatcher's post

4

Case 2:00-cv-00069   Document 37   Filed in TXSD on 02/28/2001   Page 19 of 126

unattended for an extended period of time.

Defendants deny that the decisions to not promote Plaintiff to Sergeant in 1998 or 1999, and to subsequently terminate Plaintiff, were based on his race/national origin, or in retaliation for his having filed an EEOC Complaint or exercised his right to free speech. Moreover, Plaintiff cannot prove that he would have been promoted to Sergeant in 1998 or 1999, or would not have been terminated, but for his race/national origin or his having filed an EEOC Complaint or exercised his right to free speech.

6.      Admissions of Fact.

    1.      Plaintiff is an Anglo male.

    2.      Humberto Garcia is a Hispanic male.

    3.      Robert Bazan is a Hispanic male.

    4.      Humberto Garcia was Police Chief of Texas A&M University - Kingsville Police Department during Plaintiff's tenure.

    5.      Robert Bazan was a Sergeant with the Texas A&M University - Kingsville Police Department during Plaintiff's tenure. (Deposition of Robert Bazan).

    6.      Joseph Connor was employed with Texas A&M University - Kingsville Police Department as an officer for over six years at the time of his termination.

    7.      Joseph Connor was honored as the Officer of the Year during his tenure with Texas A&M University - Kingsville.

    8.      Joseph Connor verbally voiced his concerns about Sargent Quinones drinking and driving to his residence in a university vehicle while drinking to Humberto Garcia.

    9.      The University subsequently suspended and terminated Sgt. Quinones.

Case 2:00-cv-00069   Document 37   Filed in TXSD on 02/28/2001   Page 20 of 126

10.   The Texas A&M University System Regulations state in 33.99.01, Section 5:

"Employment decisions will be based on job-related factors such as education...license/certification requirement....Race, sex, religious affiliation, or other protected status or classification shall not be the basis for a hiring decision.

7.   Contested Issues of Fact.

1.   Whether Defendant Humberto Garcia, deprived Plaintiff of the fundamental rights and privileges as guaranteed by 42 U.S.C. §1983 and by the First Amendment to the United States Constitution.

2.   Whether Defendants violated Plaintiff's federally protected rights by denying him promotions to the position of Sergeant in 1998 and 1999. Further, whether Defendants engaged in extensive retaliation in response to Plaintiff's opposition to his not being promoted in 1998 or 1999. Both of these in violation of Title VII of the Civil Rights Act of 1964, as amended.

3   Whether Plaintiff spoke out about a matter of public concern regarding a co-worker, who was an officer of the University Police Department, drinking on the job and whether the Plaintiff's termination was in response to Plaintiff's protected speech.

4.   Whether or not Plaintiff can prove that he would have been promoted in 1998 or 1999, and would not have been terminated, but for his race/national origin, his having exercised his right of free speech and/or his having filed a complaint with the EEOC.

5.   Whether Defendant Garcia is entitled to qualified immunity.

6.   Whether the Defendants are liable to Joseph Connor for the following: Actual damages plus interest; Compensatory damages arising from the physical and emotional injury, pain, suffering, loss of reputation and humiliation plaintiff suffered as a result of defendant misconduct;

Punitive damages as allowed by law; Exemplary damages as allowed by law; Injunctive relief of an affirmative nature, providing make whole economic relief and reinstatement; Prejudgment interest as allowed by law; Post-judgment interest as allowed by law; Attorney's fees; Court costs; and such other legal or equitable relief ultimately justified by the proof of this case.

7.     Whether the Plaintiff mitigated his damages.

8.     Humberto Garcia never took a Hispanic officers' traffic ticket book away. (Deposition of Humberto M. Garcia, p. 102, lines 17-25.)

9.     Humberto Garcia never took a Black officer's traffic ticket book away.(Deposition of Humberto M. Garcia, p. 102, lines 17-25.)

10.    In February 1997, it was declared that the policy manual for the university police department was not valid by Humberto Garcia.  (Plaintiff's Exhibit 6 - 02/06/97 Memo from Defendant Garcia declaring policies void).

11.    The University Police Department did not have a policy regarding discrimination or equal employment opportunities during Humberto Garcia's tenure   . (Exhibit 3 - Deposition of Humberto Garcia, p. 52, lines 13-16.)

12.    Humberto Garcia was a supervisor with the authority to hire, fire, promote and demote. (Exhibit 3 - Deposition of Humberto Garcia, p. 40, lines 17-24; Exhibit 15 - Memorandum "I have approved the Promotion").

13.    Humberto Garcia did not read the Texas A&M University's policy regarding Equal Employment Opportunities. (Exhibit 3 - Deposition of Humberto Garcia, p. 40, lines 2-5, p. 41, lines 8-15).

14.     Humberto Garcia testified that he never disciplined a Hispanic employee or Black employee for leaving work early or coming in late. (Exhibit 3 - Deposition of Humberto Garcia, p. 103, lines 1-12).

15.     Joseph Connor sent a memorandum to Steven Crandall on 11/02/98, the Vice President for Finance and Administration, about the disparate treatment he was experiencing regarding leave. (Exhibit 17 - 11/2/98 Crandall Memorandum Regarding Leave).

16.     Chris Florence, an Anglo officer, notified Sargent Perez that there were problems with Joseph Connor's officer radio.  (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph K. Connor; Exhibit 7 - Deposition of Robert Nash, Jr., pages 42-43, lines 5-10; Exhibit 4 - Deposition of Robert Bazan, pages 49-50, lines 18-6; Exhibit 5 - Plaintiff's Deposition Exhibits, Plaintiff's Exhibit 8, Memorandum regarding portable radios).

17.     Humberto Garcia called Joseph Connor a bastard in Spanish a few weeks before he was terminated. (Exhibit 9 - Deposition of Molly Sanchez, p. 6, lines 2-24).

18.     Joseph Connor requested that he train officers in first aid and CPR.  (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph K. Connor; Exhibit 3 - Deposition of Humberto Garcia, Pages 105 - 107, lines 20- 1).

19.     Prior to 1998, the University Police Department did not have a promotion board, Humberto Garcia made the sole decisions regarding promotion. (Exhibit 3 - Deposition of Humberto Garcia, p. 91, lines 6-15; Exhibit 4 - Deposition of Robert Bazan).

20.     After 1998, a promotion board, appointed by Humberto Garcia, made decisions regarding promotions.  (Exhibit 3 - Deposition of Humberto Garcia, p. 92, lines 2-4; Exhibit 4 - Deposition of Robert Bazan).

8

Case 2:00-cv-00069   Document 37   Filed in TXSD on 02/28/2001   Page 23 of 126

21.    The promotion boards for 1998 and 1999 were made up of all non-Anglos. (Exhibit 3 - Deposition of Humberto Garcia, pages 92-93, lines 8-11; Exhibit 4 - Deposition of Robert Bazan).

22.    No Anglo has held any supervisory position with the TAMUK Police Department for at least the last ten years. (Exhibit 3 - Deposition of Humberto Garcia, p. 95, lines 21-23; Exhibit 4 - Deposition of Robert Bazan; Exhibit 7 - Deposition of Robert Nash, Jr.).

23.    Humberto Garcia did not possess a bachelor's degree.

24.    Humberto Garcia is unaware of the requirement that the Chief of Police at Texas A&M University - Kingsville hold a bachelor's degree. (Exhibit 3 - Deposition of Humberto Garcia, p. 96, lines 1-6).

25.    A bachelor's degree is a "necessary qualification" for the position of Director/Chief of Police. (Exhibit 5 - Plaintiff's Deposition Exhibits, Plaintiff's Exhibit 7, Job description for Director/Chief of Police).

26.    Humberto Garcia signed the job description for Director/Chief of Police in 1997, along with Steven Crandall, VPFA, despite Defendant Garcia not possessing a "necessary" qualification for the position. (Exhibit 5 - Plaintiff's Deposition Exhibits, Plaintiff's Exhibit 7, Job description for Director/Chief of Police).

27.    Humberto Garcia refused to consider education as a qualification in hiring and promotions. (Exhibit 3 - Deposition of Humberto Garcia, p.90, lines 16-19).

28.    Humberto Garcia didn't receive training as far as discrimination in the workplace while he was employed with the A&M system. (Exhibit 3 - Deposition of Humberto Garcia, p. 40, lines 2-5; Exhibit 5 - Plaintiff's Deposition Exhibits, Plaintiff's Exhibit 1, Humberto Garcia's

CNIPDF - www.fxiso.com

personnel file).

29.    In 1998, Sargent Franco, a Hispanic male, was promoted.

30.    Sargent Franco was made the fire arms safety officer even though he had never been to school for such training. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Humberto Garcia, p. 2-15).

31.    Joseph Connor was told by Humberto Garcia that he would be sent to fire arms instructor school. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Humberto Garcia, p. 2-15).

32.    Joseph Connor was not sent to fire arms instructor school by the Texas A&M University Police Department. (Exhibit 1 - Affidavit of Joseph K. Connor).

33.    The Promotion Board had no policies and procedures. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's Deposition Exhibits; Exhibit 7 - Deposition of Robert Nash, Jr.)

34.    In March 1999, a memo was circulated that all supervisors would be present at the promotion board.  (Exhibit 1 - Affidavit of Joseph K. Connor, Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's Deposition Exhibits; Exhibit 7 - Deposition of Robert Nash, Jr.). However, the promotion board met without all supervisors present. (Exhibit 1 - Affidavit of Joseph K. Connor, Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's Deposition Exhibits; Exhibit 7 - Deposition of Robert Nash, Jr.).

10

Case 2:00-cv-00069   Document 37   Filed in TXSD on 02/28/2001   Page 25 of 126

35.   At all times during Joseph Connor's employment with Defendants, he possessed the required qualifications for promotion as set out by the Texas A&M University System. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 5 - Plaintiff's Deposition Exhibits).

36.   On several occasions throughout Plaintiff's employment with Defendants, Humberto Garcia called Plaintiff a liar. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia, p. 110, lines 13-8).

37.   Joseph Connor's prior supervisory experience was not considered for his potential promotions. (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's Deposition Exhibits).

38.   Supervisors frequently spoke Spanish. (Exhibit 7 - Deposition of Robert Nash, Jr., pages 17, 18, 19, 20, lines 20 - 10; Exhibit 4 - Deposition of Robert Bazan, pages 60, 61, 62, 63, lines 25-25; Exhibit 9 - Deposition of Molly Sanchez, p. 10, lines 10-13).

39.   When the Sergeants were together it was easier for them to communicate in Spanish. (Exhibit 4 - Deposition of Robert Bazan, p. 63, lines 8-19).

40.   When the Sergeants would speak in Spanish, that would include talking about the job.   (Exhibit 4 - Deposition of Robert Bazan, p. 63, lines 23-25).

41.   At the time of Joseph Connor's termination, he was the only Anglo employee of the University Police Department. (Exhibit 7 - Deposition of Robert Nash, Jr., p. 17, lines 8-13).

42.   At the time of Joseph Connor's termination there were about 15 patrolmen and five or six other employees such as dispatchers and office help. (Exhibit 7 - Deposition of Robert Nash,

11

Case 2:00-cv-00069   Document 37   Filed in TXSD on 02/28/2001   Page 26 of 126

p. 17, lines 14-19).

43.    Sargent Bazan left the University Police Department building, when he was the only person on duty, and was not terminated.   (Exhibit 1 - Affidavit of Joseph K. Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 4 - Deposition of Robert Bazan; Exhibit 5 - Plaintiff's Deposition Exhibits; Exhibit 7 - Deposition of Robert Nash, Jr.; Exhibit 9 - Deposition of Molly Sanchez).

44.    Humberto Garcia doesn't know if Joseph Connor received a copy of any write-ups he received in April, May or June 1999. (Exhibit 3 - Deposition of Humberto Garcia, p. 60, lines 18-20).

45.    Humberto Garcia cannot cite laws, regulations or other standards which Joseph Connor violated which led to his termination. (Exhibit 3 - Deposition of Humberto Garcia, p. 77, lines 12-15, p. 81, lines 18-25, p. 82, lines 1-5).

46.    Defendants are not sure who replaced Plaintiff. (Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 7 - Deposition of Robert Nash, Jr.).

47.    On April 1, 1999, Sargent Hiram Perez told officer #110 to ask Mr. Knapp if it was okay with him (Knapp) to bring in the stereo to check against the cases U.P.D. had. The items were removed after permission was given by Mr. Knapp and brought to U.P.D....." (Exhibit 5 - Plaintiff's Deposition Exhibits - Plaintiff's Exhibit 3).

48.    Prior to Joseph Connor being written up for confiscating the stereo on April 1, 1999, Humberto Garcia did not speak to Sergeant Hiram Perez about the incident. (Exhibit 1 - Affidavit of Joseph K. Connor).  At the time, Sergeant Perez was Joseph Connor's supervisor. (Exhibit 1 - Affidavit of Joseph K. Connor).

49.     Lieutenant Jefferson, a black female, used the copy machine for personal use and was not disciplined.

50.     Sergeant Longoria and Defendant Sergeant Robert Bazan took University property for their personal use and were not disciplined. (Exhibit 7 - Deposition of Robert Nash, Jr., pages 51-52, lines 3-19).  Humberto Garcia was aware of these activities.  (Exhibit 7 - Deposition of Robert Nash, Jr., page 52, lines 9-19).

51.     The University Police Department does not have procedures for tagging and storing evidence. (Exhibit 1 - Affidavit of Joseph Connor; Exhibit 2 - Deposition of Joseph Connor; Exhibit 3 - Deposition of Humberto Garcia; Exhibit 4 - Deposition of Robert Bazan; Exhibit 7 - Deposition of Robert Nash, Jr.).

52.     Humberto Garcia stated that Joseph Connor would never make sergeant as long as he was there. (Exhibit 7 - Deposition of Robert Nash, Jr., p. 14, lines 7-22)..

8.     Agreed Propositions of Law.

  1.     Whether Plaintiff's evidentiary proof will support a judgment for First Amendment retaliation, Title VII discrimination and Title VII retaliation.

  2.     Whether either Defendant can prove that the same adverse actions would have been taken against Plaintiff in the absence of protected First Amendment free speech activity and/or Plaintiff's filing an EEOC Complaint.

9.     Contested Propositions of Law.

10.     Exhibits.

     A list of exhibits for each party is attached hereto.

11.     Witnesses.

13

A list of witnesses for each party is attached hereto.

12.     Settlement. All settlement efforts have been exhaused, the case cannot be settled, and it will have to be tried.

13.     Trial.

    A.     The probably length of trial is 4 to 5 days - depending on the length of the work day.

    B.     At this time, no logistical problems are anticipated.


14.     Attachments.

    A.     For a jury trial:

        (1)     Proposed questions for the voir dire examination.

        (2)     Proposed charge, including instructions, definitions and special interrogatories, with authority.


Date: _____          _____

                      UNITED STATES DISTRICT JUDGE

Approved:


Date: _____          _____

                      Attorney-in-Charge, Plaintiff

Date: _____          _____

                      Attorney-in-Charge, Defendant


14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. C-00-69 |
| | § | |
| TEXAS A&M UNIVERSITY - KINGSVILLE; | § | **JURY TRIAL REQUESTED** |
| HUMBERTO GARCIA, Individually and in | § | |
| His Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in His Official Capacity | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S MOTION IN LIMINE

Before the voir dire examination of the jury panel, and out of the presence and hearing of the jury panel, plaintiff, Joseph Connor, makes this motion in limine. Plaintiff seeks to exclude matters that are incompetent, irrelevant, or prejudicial to the material issues in this cause. If defendants inject these matters into the trial of this cause through a party, an attorney, or a witness, defendants will cause irreparable harm to plaintiff's cause, which no jury instruction would cure. If any of these matters are brought to the attention of the jury, directly or indirectly, plaintiff would be compelled to move for a mistrial. In an effort to avoid prejudice and a possible mistrial, plaintiff urges this motion in limine.

Plaintiff asks the court, by entering the attached order, to prohibit defendant from offering any of this evidence without first asking for a ruling from the court on the admissibility of the evidence, out of the presence of the jury.

1.      Any evidence defendants did not produce in discovery.

Agreed:      Yes           No

2.      Any testimony or argument suggesting plaintiff, through his attorney, asserted claims of privilege during discovery.

Agreed:        Yes            No

3.      Any attempt to elicit testimony from plaintiff about communications with his attorney.

Agreed:        Yes            No

4.      Any comment by defendant's attorney that informs the jury of the effect of its answers to the questions in the charge.

Agreed:        Yes            No

5.      Any mention of the probable testimony of a witness who is absent, unavailable, not called to testify in this cause, or not allowed, in any manner, to testify in this cause.

Agreed:        Yes            No

6.      Any attempt to seek or request plaintiff's attorneys to produce documents, to stipulate to any fact, or to make any agreement in the presence of the jury.

Agreed:        Yes            No

7.      Any mention plaintiff's recovery will not be subject to taxation.

Agreed:        Yes            No

8.      Any mention that Robert Nash has been arrested.

Agree:         Yes            No

9.      Any mention of a criminal conviction of any person which was not identified in responses to discovery.

Agree:         Yes            No

10.     Any mention of any automobile accidents Plaintiff has had in that they are not relevant to this case.

Agree:          Yes              No

11.     Any reference or words to the effect that the students of Texas A&M University, the taxpayers public, an insurance company or th public in general would end up paying for any judgment in this case or similar case.

Agree:          Yes              No

12.     Any reference to Plaintiff's job performance at any other job prior to his employment with Texas A&M University – Kingsville.

Agree:          Yes              No

13.     Any reference to allegations that Plaintiff sexually harassed anyone in the workplace. This is irrelevant to this case; unverified and would only serve to bias the jury.

Agree:          Yes              No

14.     That Plaintiff allegedly slept while on the job with TAMUK.

Agree:          Yes              No

15.     Any reference to the claim and supporting information that was presented by either the Plaintiff and/or Defendants in regard to the Plaintiff's claim for unemployment benefits.

Agree:          Yes              No

16.     Any reference to the Texas Commission on Human Rights and/or Equal Employment Opportunities Commission's investigation into Plaintiff's charges against Defendants.

Agree:          Yes              No

## PRAYER

For these reasons, plaintiff asks the court to instruct defendant and all counsel not to mention,

refer to, interrogate about, or attempt to convey to the jury in any manner, either directly or indirectly, any of these matters without first obtaining the permission of the court outside the presence and hearing of the jury, and further instruct defendants and all counsel to warn and caution each of their witnesses to follow the same instructions.

Respectfully submitted,

Law Office of Gay E. Gilson
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412
Telephone: (361) 814-0573
Facsimile: (361) 814-0674

By: _____
GAY E. GILSON
SBN 00784131/Fed.I.D. 16385
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded on February 28, 2001 by certified mail, return receipt requested to:

William T. Deane                              Via CMRRR # Z 189 456 072
Jose Rangel
Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

_____
Gay E. Gilson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. C-00-69 |
| | § | |
| TEXAS A&M UNIVERSITY - KINGSVILLE; | § | **JURY TRIAL REQUESTED** |
| HUMBERTO GARCIA, Individually and in | § | |
| His Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in His Official Capacity | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER IN LIMINE</u>

The court, having considered the Plaintiff's motion in limine and having heard the arguments of counsel, orders Defendants, their agents and employees and Counsel for Defendants, and all witnesses called on behalf of Defendants to refrain from any mention or interrogation, directly or indirectly, including offering documentary evidence, about any of the following matters without first requesting and obtaining a ruling from the court outside the presence and hearing of all prospective jurors and jurors ultimately selected in this cause concerning any alleged theory of admissibility of the matters.

1.    Any evidence defendants did not produce in discovery.

Granted: _____    Denied _____

2.    Any testimony or argument suggesting plaintiff, through his attorney, asserted claims of privilege during discovery.

Granted: _____    Denied _____

3.     Any attempt to elicit testimony from plaintiff about communications with his attorney.

Granted: _____     Denied _____

4.     Any comment by defendant's attorney that informs the jury of the effect of its answers to the questions in the charge.

Granted: _____     Denied _____

5.     Any mention of the probable testimony of a witness who is absent, unavailable, not called to testify in this cause, or not allowed, in any manner, to testify in this cause.

Granted: _____     Denied _____

6.     Any attempt to seek or request plaintiff's attorneys to produce documents, to stipulate to any fact, or to make any agreement in the presence of the jury.

Granted: _____     Denied _____

7.     Any mention plaintiff's recovery will not be subject to taxation.

Granted: _____     Denied _____

8.     Any mention that Robert Nash has been arrested.

Granted: _____     Denied _____

9.     Any mention of a criminal conviction of any person which was not identified in responses to discovery.

Granted: _____     Denied _____

10.    Any mention of any automobile accidents Plaintiff has had in that they are not relevant to this case.

Granted: _____     Denied _____

11.     Any reference or words to the effect that the students of Texas A&M University, the taxpayers public, an insurance company or th public in general would end up paying for any judgment in this case or similar case.

Granted: _____     Denied _____

12.     Any reference to Plaintiff's job performance at any other job prior to his employment with Texas A&M University – Kingsville.

Granted: _____     Denied _____

13.     Any reference to allegations that Plaintiff sexually harassed anyone in the workplace. This is irrelevant to this case; unverified and would only serve to bias the jury.

Granted: _____     Denied _____

14.     That Plaintiff allegedly slept while on the job with TAMUK.

Granted: _____     Denied _____

15.     Any reference to the claim and supporting information that was presented by either the Plaintiff and/or Defendants in regard to the Plaintiff's claim for unemployment benefits.

Granted: _____     Denied _____

16.     Any reference to the Texas Commission on Human Rights and/or Equal Employment Opportunities Commission's investigation into Plaintiff's charges against Defendants.

Granted: _____     Denied _____

SIGNED this _____ Day of _____, 2001.


_____
PRESIDING JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR, | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. C-00-069 |
| TEXAS A&M UNIVERSITY-KINGSVILLE, | § | |
| HUMBERTO GARCIA, Individually and in | § | |
| his Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in his Official Capacity, | § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION IN LIMINE

NOW COME Defendants Texas A&M University at Kingsville (the "University") and

Humberto Garcia, by and through their attorney of record, and before any proceedings are held

before a jury, move the Court as follows:

### I.

That the Plaintiff, and his attorney and all witnesses called by Plaintiff, be instructed not to

mention or to bring before the jury panel any evidence or testimony on the issues addressed in this

motion, whether directly or indirectly, upon voir dire, reading of pleadings, statement of the case,

interrogatories of a witness, reading of oral depositions, objections, offering documentary evidence,

or in any other means or manner unless and until such matters have been first brought to the attention

of the Court out of the presence or hearing of the jury panel or the jury and a favorable ruling

received as to the admissibility and relevancy thereof.

### II.

That the Plaintiff and his attorney be instructed to instruct all witnesses called by Plaintiff

not to volunteer, inject, disclose, state or mention to the jury any of the matters hereinafter set forth

unless specifically questioned thereon after a prior ruling by the Court.

## III.

That Plaintiff and his attorney be instructed and through them, all witnesses, representatives

and parties appearing at his request, that the failure to abide by such order of the Court may

constitute contempt and/or necessitate the granting of a Motion for Mistrial.

## IV.

The specific matters to which this Motion refers are as follows:

1. Any suggestion that Defendants' counsel specialize in defending claims such as those presented in this case, or that Plaintiff's counsel specializes in bringing such claims. Any such statements are wholly immaterial to the fact issues before the jury and would serve only to prejudice Defendants. FED.R.EVID. 401, 402 and 403.

   GRANTED _____          DENIED_____

2. Any opinion or speculation of any witness as to why Plaintiff Connor did not receive a promotion to sergeant and/or was terminated, including rumors or beliefs at the time: this is not competent evidence and its probative value, if any, is outweighed by its prejudicial impact.

   GRANTED _____          DENIED_____

3. Any testimony or evidence regarding complaints or lawsuits alleging discrimination or retaliation by any employee or former employee of the University, other than Plaintiff, against the University or any of its employees or representatives, in their official or individual capacities, as well as any reference which may suggest the existence of such lawsuits or complaints or their outcome. *Goff v. Continental Oil Co.,* 678 F.2d 593, 596-97 (5th Cir. 1982); *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d. 361, 365 (Tex. 1987). Further, any such statements are wholly immaterial to the fact issues before the jury and would serve only to prejudice Defendants. FED.R.EVID. 401, 402 and 403.

   GRANTED _____          DENIED_____

CMsPDF - www.fexisa.com

4.      Any reference to the Texas Employment Commission or the Texas Workforce Commission, and/or the fact that a hearing regarding Plaintiff was held before said agency(ies) after his termination, and/or the results of that hearing (e.g., any findings of fact, conclusions of laws, judgment, final order). Any such reference is wholly immaterial to the fact issues before the jury and would serve only to confuse the jury and prejudice Defendants. FED.R.EVID. 401, 402 and 403.  See also §213.007 of the TEX. LAB. CODE (2000).

        GRANTED _____              DENIED_____


5.      Any references to the probable testimony of a person who will not be a witness at this trial. Any such reference is wholly immaterial to the fact issues before the jury and would serve only to confuse the jury and prejudice Defendants. FED.R.EVID. 401, 402 and 403.

        GRANTED _____              DENIED_____


6.      Any reference that this Court or an Appellate Court has the right to overturn the verdict in this cause.

        GRANTED _____              DENIED_____


7.      Any comment upon the failure of the Defendants to call witnesses who were subject to subpoena for deposition or trial and available to both parties in this cause.  Any such reference is wholly immaterial to the fact issues before the jury and would serve only to confuse the jury and prejudice the Defendants. Fed. R. Evid. 401, 402 and 403.

        GRANTED _____              DENIED_____


8.      Any reference to any other discrimination cases that have resulted in a judgment in favor of any Plaintiff. Any such reference is wholly immaterial to the fact issues before the jury and would serve only to confuse the jury and prejudice Defendants. FED.R.EVID. 401, 402 and 403.

        GRANTED _____              DENIED_____


3

9.      Any reference to any unrelated cases Plaintiff's counsel or the Attorney General's Office has settled or has pending.  Any such reference is wholly immaterial to the fact issues before the jury and would serve only to confuse the jury and prejudice Defendants.  FED.R.EVID. 401, 402 and 403.

        GRANTED _____          DENIED_____


10.     Any statement, testimony, or argument that Defendants are really the State of Texas and the State can easily afford to pay Plaintiff.  Any such reference is wholly immaterial to the fact issues before the jury and would serve only to confuse the jury and prejudice Defendants.  FED.R.EVID. 401, 402 and 403.

        GRANTED _____          DENIED_____


11.     Any comment or suggestion to elicit undue and improper sympathy for Plaintiff by suggesting that he is an individual of limited means who is bringing suit against the State of Texas. Any such reference is wholly immaterial to the fact issues before the jury and would serve only to confuse the jury and prejudice Defendants.  FED.R.EVID. 401, 402 and 403.

        GRANTED _____          DENIED_____


12.     Any argument or comment to the effect that a juror should place him or herself in the position of the Plaintiff in this cause in determining whether there was a violation of any rights, or in determining the amount of recovery which Plaintiff should receive.  Any such reference is wholly immaterial to the fact issues before the jury and would serve only to confuse the jury and prejudice Defendants.  FED.R.EVID. 401, 402 and 403.

        GRANTED _____          DENIED_____


13.     Any statement or attempts by Plaintiff's counsel to vouch personally for any witness or for Plaintiff.

        GRANTED _____          DENIED_____


4

14.  Any exhibits admitted prior to trial but not referred to or employed in anyway during trial by either party will not be submitted to the jury.

GRANTED _____          DENIED_____

15.  Any references to Plaintiff's exercise of his right of freedom of speech as including anything other than his alleged speaking out about Quinones' drinking, or smelling of alcohol on the job.

GRANTED _____          DENIED_____

16.  With regard to Defendant Texas A&M University in Kingsville, any testimony, references, or documentation regarding any purported discriminatory (i.e. on the basis of race/national origin) actions taken against Connor prior to August 26, 1998.

GRANTED _____          DENIED_____

17.  With regard to Defendant Texas A&M University in Kingsville, any testimony, references, or documentation regarding any purported retaliatory actions taken against Connor prior to the time Connor filed his EEOC charge.

GRANTED _____          DENIED_____

18.  Any comment or suggestion that the Plaintiff should be given the benefit of the doubt in this lawsuit.

GRANTED _____          DENIED_____

19.  Any reference to pre-trial rulings of this Court or rulings made outside the presence of the jury.

GRANTED _____          DENIED_____

WHEREFORE, Defendants respectfully request that this Court enter an order sustaining the

above Motion in Limine in whole or in part, and that Plaintiff be ordered in accordance with

5

Paragraphs I, II, III, and IV above.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

TONI HUNTER, Chief
General Litigation Division

JOSE M. RANGEL
Assistant Attorney General
Texas Bar No. 16543550
Fed. Id No. 19859
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4264
(512) 320-0667 FAX

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been sent by U.S. Certified Mail, on February 28, 2001, to:

Gay E. Gilson
LAW OFFICE OF GAY E. GILSON
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412

JOSE M. RANGEL
Assistant Attorney General

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JOSEPH K. CONNOR                              §
                                             §
           Plaintiff                          §
                                             §
vs.                                           §        Civil Action No. C-00-69
                                             §
TEXAS A&M UNIVERSITY - KINGSVILLE; §          **JURY TRIAL REQUESTED**
HUMBERTO GARCIA, Individually and in §
His Official Capacity; and ROBERT BAZAN, §
Individually and in His Official Capacity    §
                                             §
           Defendants.                        §

## PLAINTIFF'S EXHIBIT LIST

| Exhibit Number | Description of Exhibit | Admitted | Denied |
|---|---|---|---|
| 1 | Charge of Discrimination of A J Mann | | |
| 2 | Memorandum to Garcia/Jefferson from Salvador Franco of 09/29/1998 | | |
| 3 | 04/01/99 Officer's Report from Sgt. Hiram Perez | | |
| 4 | Incident Report - Jennings, Galindo, Saldono, Stanick | | |
| 5 | Memorandum from Sgt. Franco to Connor of 04/26/99 | | |
| 6 | Memorandum to Crispin from Rodriguez of 04/29/99 | | |
| 7 | Officer's Report of 05/05/99 by Sgt Bazan | | |
| 8 | Officer's Report of 5/16/99 by L. Everett | | |
| 9 | Officer's Report of 5/24/99 by Jefferson | | |
| 10 | Memorandum of 06/30/99 from Medina to Connor | | |
| 11 | Debbie Wilson's Memo to file of 06/17/99 | | |

| | | | |
|---|---|---|---|
| 12 | 06/17/99 Memo to Connor from Harsfield | | |
| 13 | TAMUK Employee Complaint/Appeal Form 6/11/99 | | |
| 14 | TCLEOSE Report of Resignation or Separation of License Holder 06/04/99 | | |
| 15 | 06/04/99 Note signed by Humberto Garcia about Connor's termination | | |
| 16 | Memorandum from Connor to Garcia of 03/12/99 regarding promotion | | |
| 17 | 05/05/99 letter to Connor | | |
| 18 | 04/24/99 memorandum to Connor from Garcia | | |
| 19 | 05/27/93 Proactive Section Note | | |
| 20 | Connor evaluation of 4/21/97 | | |
| 21 | Budget Change Form 08/25/97 | | |
| 22 | Pictures of Connor | | |
| 23 | Officer's Report of Bazan of 09/28/98 | | |
| 24 | Officer's Report of Zapata of 09/27/98 | | |
| 25 | 08/26/98 memorandum from Garcia to all officers | | |
| 26 | 08/13/98 memorandum from Garcia regarding promotion announcement | | |
| 27 | TAMUK Compensation Statement for Connor for 97-98 | | |
| 28 | 6/4/99 Budget/Payroll/Personnel Action regarding Connor involuntary termination | | |
| 29 | Budget Change 8/11/93 | | |
| 30 | Officer's Report of Joseph Connor of 04/21/99 | | |
| 31 | 03/31/99 Memorandum from Garcia regarding promotion | | |
| 32 | 03/12/99 Memorandum from Garcia about Sgt's position | | |

| 33 | TAMUK Activity Log for 04/21/99 | | |
|---|---|---|---|
| 34 | TAMUK Work Related Incident Report of 05/09/98 | | |
| 35 | Accident or Injury Report dated 05/10/98 | | |
| 36 | TAMUK Performance Appraisal for Connor dated 3/10/98 by Connor | | |
| 37 | Jury Summons - mail form for Connor | | |
| 38 | TAMUK Employee Evaluation for Connor dated 4/21/97 by Connor | | |
| 39 | Budget Change 07/31/96 | | |
| 40 | Jury Excuse 08/05/96 | | |
| 41 | Connor Application of employment | | |
| 42 | Course titles for Connor | | |
| 43 | TAMUK Employee Evaluation Form dated by Perez on 04/30/96 | | |
| 44 | Budget Change 10/10/95 | | |
| 45 | Budget Change 8/20/95 | | |
| 46 | TAMUK Employee Evaluation Form for Connor dated by Connor on 3/24/95 | | |
| 47 | TAMUK Compensation Statement for Connor for 94-95 | | |
| 48 | Budget Change 07/27/94 | | |
| 49 | Texas A&I Employee Evaluation Form for Connor dated by Connor 04/19/93 | | |
| 50 | Budget Change of 03/05/92 | | |
| 51 | TAMUK Employee Evaluation Form for Connor dated 5/12/92 by Garcia | | |
| 52 | Typed Complaint and Appeal form by Connor dated 5/15/99 | | |
| 53 | Memorandum from Garcia voiding policies dated 02/06/97 | | |

CDAPDF - www.texila.com

| 54 | 09/05/98 Officer's Report from Longoria | | |
|----|------------------------------------------|--|--|
| 55 | 04/26/99 Memorandum from Sgt Franco to Connor | | |
| 56 | Room Entry Notice of 04/21/99 | | |
| 57 | University Police Department Rules and Regulations April 1998 | | |
| 58 | Job Description for Sergeants | | |
| 59 | Job Description for Chief/Director of Police | | |
| 60 | Job Description for Lieutenant | | |
| 61 | 06/07/99 Letter regarding health/dental coverage | | |
| 62 | Health care coverage form | | |
| 63 | 06/07/99 Letter regarding Lump Sum Vacation Payment | | |
| 64 | 07/15/99 Vacation Pay-Out Affidavit | | |
| 65 | Connor History provided by TAMUK | | |
| 66 | Christmas Card | | |
| 67 | Robert Bazan's personnel file | | |
| 68 | Ripped up leave request form | | |
| 69 | 11/02/98 Memorandum from Crandall to Connor | | |
| 70 | 07/26/99 Letter from Sinton Police Department | | |
| 71 | 02/08/00 Letter from Nueces County Constable Pct. 6 | | |
| 72 | 05/24/99 Memorandum from Medina to Connor | | |
| 73 | TAM System Police Department General Operational Philosphy | | |
| 74 | Position Announcement - 09/12/95 | | |
| 75 | Position Announcement, Patrol Officer Opening 06/03/99 | | |
| 76 | Wright legal bill of 11/03/99 | | |

| 77 | B.J.'s Famous Uniforms bill | | |
|----|------------------------------|--|--|
| 78 | 08/11/99 Letter from Texas A&M University - Corpus Christi regarding job position | | |
| 79 | 02/28/00 Letter from County of Nueces Constable Pct 6 | | |
| 80 | 10/21/99 Letter from the City of Corpus Christi | | |
| 81 | 05/10/99 Grievance to Hartsfield from Connor | | |
| 82 | 08/27/98 Request of Humberto Garcia for information - promotion board | | |
| 83 | TAMUK Employee Handbook | | |
| 84 | System Regulations | | |
| 85 | Dismissal and Notice of Rights | | |
| 86 | 05/11/99 Memorandum from Connor to Garcia | | |
| 87 | 04/21/97 Evaluation | | |
| 88 | TAMUK Employee Handbook provided in discovery | | |
| 89 | 05/04/99 Memorandum from Connor to Garcia | | |
| 90 | 09/21/94 Memorandum from Garcia to UPD | | |
| 91 | Southwestern Bell Telephone bills | | |
| 92 | 05/25/99 Memorandum from Medina to Connor | | |
| 93 | Offense Report - 09/18/98 | | |
| 94 | Check to United Health Care of Texas | | |
| 95 | Pay stub for Joseph Connor | | |
| 96 | Staff time card for Connor 10/98 | | |
| 97 | Staff time card for Connor 09/98 | | |
| 98 | Unemployment Insurance Information including internal log and three sheets of log information - record of looking for work | | |

| 99 | Condit Letter of 06/22/99 with enclosures | | |
|---|---|---|---|
| 100 | Condit Letter to Hartsfield OF 06/22/99 | | |
| 101 | Requirement that Form F-5 be provided to the individual | | |
| 102 | 06/17/99 Memorandum to Connor from Hartsfield | | |
| 103 | 06/28/99 Letter from Hartsfield to Condit | | |
| 104 | 09/22/99 Letter from Sinton Police Department to Connor | | |
| 105 | Curriculum Vitae of Joseph Connor | | |
| 106 | 01/13/99 Memorandum to Garcia from UPD Police Section | | |
| 107 | Social Security Statement for Joseph Connor | | |
| 108 | W-2 for Joseph Connor for the year 2000 | | |
| 109 | W-2 for Joseph Connor for the year 1999 | | |
| 110 | 1998 Income Tax Return for Connor | | |
| 111 | 1997 Income Tax Return for Connor | | |
| 112 | W-2 for Joseph Connor for the year 1996 | | |
| 113 | 06/17/99 Memorandum from Hartsfield to Connor | | |
| 114 | Officer's Report 07/17/98 report of Quinones smelling of alcohol by Connor | | |
| 115 | United Healthcare - Explanation of Benefits | | |
| 116 | TAMUK Performance Appraisal Form 03/10/98 | | |
| 117 | Dismissal and Notice of Rights | | |
| 118 | Charge of Discrimination | | |
| 119 | Affidavit of Joseph Connor | | |
| 120 | A copy of Joseph Connor's personnel file without TWC documentation | | |
| 121 | Deposition of Humberto Garcia | | |

| 122 | Deposition of Robert P. Bazan | | |
|---|---|---|---|
| 123 | Deposition of Mary "Molly" Sanchez | | |
| 124 | Deposition of Robert W. Nash, Jr. | | |
| 125 | Deposition of Joseph K. Connor | | |
| 126 | May 24, 1999 Letter from Medina to Cisneros | | |
| 127 | Police Report of 02/10/99 | | |
| 128 | Traffic citation for Xin Xin | | |
| 129 | Note - you do not have to appear at Delgado's court | | |
| 130 | Notice of Charge of Discrimination | | |
| 131 | Report of 8/12/96 of Connor regarding Quinones | | |
| 132 | Texas A&M Student Handbook | | |
| 133 | Advanced Peace Officer - Connor | | |
| 134 | Receipt Smith's Guns, Inc. | | |
| 135 | Documents contained in Exhibit 30 in Defendant's deposition exhibits | | |
| 136 | Receipt from Foley's | | |
| 137 | B.J. Famous Uniforms Receipt | | |
| 138 | Documents contained in Exhibit 31 in Defendant's deposition exhibits | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Plaintiff's attorney experienced computer problems – the computer has been locking up because of the large volume of material being transmitted from the defense attorneys via the internet – an respectfully requests that they be allowed to supplement this list if necessary.

Plaintiff reserved the right to use documents not disclosed for impeachment purposes.

Respectfully submitted,

Law Office of Gay E. Gilson
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412
Telephone: (361) 814-0573
Facsimile: (361) 814-0674

By: _____
GAY E. GILSON
SBN 00784131/Fed.I.D. 16385
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded on February 28, 2001 by certified mail, return receipt requested to:

William T. Deane                                  Via CMRRR # Z 189 456 072
Jose Rangel
Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

_____
Gay E. Gilson

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR, | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. C-00-069 |
| TEXAS A&M UNIVERSITY-KINGSVILLE, | § | |
| HUMBERTO GARCIA, Individually and in | § | |
| his Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in his Official Capacity, | § | |
| *Defendants.* | § | |

## DEFENDANTS' WITNESS LIST

1.    Sgt. Robert Bazan
      MSC 126
      700 University Blvd.
      Kingsville, Texas 78363
      (361) 593-2611

      Sargent Bazan was a member of the 1998 and 1999 interview/selection board for the position of Sargent. Sargent Bazan has knowledge of Plaintiff's job performance.

2.    Pedro Carazos
      Texas A&M University - Kingsville
      MSC 126
      700 University Blvd.
      Kingsville, Texas 78363
      (361) 593-2611

      Officer Carazos was an applicant for the 1998 position of Sargent. Carazos can testify as to Plaintiff's job performance.

3.    Joseph K. Connor
      6034 Sweet Gum
      Corpus Christi, Texas 78415
      (361) 854-8565

      Mr. Connor is the Plaintiff in this matter.

4.      Luis Everett
        826 Jefferson Street
        Alice, Texas 78332
        (361) 664-4952

        Officer Everett was an applicant for the 1999 position of Sargent.

5.      Sgt. Salvador G. Franco
        MSC 126
        700 University Blvd.
        Kingsville, Texas 78363
        (361) 593-2611

        Sgt. Franco was a member of the 1999 interview/selection board for the position of
Sargent and was an applicant for the 1998 position. Sgt. Franco may also testify as to Plaintiff's
job performance.

6.      Charlie Fulton
        1518 Barcelona Drive
        Corpus Christi, Texas 78416
        (361) 852-3835

        Officer Fulton was an applicant for the 1999 position of Sargent.

7.      Humberto Garcia (Retired Chief)
        2012 S. Third Street
        Kingsville, Texas 78363
        (361) 595-4574

        Mr. Garcia is a defendant in this case. Among other things, he has knowledge of the
manner in which the decisions as to who would be promoted to the position of Sargent in 1998
and 1999, were made, the disciplinary process which was followed in this matter and Plaintiff's
performance.

8.      Antonio Gonzalez, Jr. (former Director University Police)
        Kleberg Co. Sheriff
        1500 East King
        Kingsville, Texas 78363
        (361) 595-8500

        Mr. Gonzalez has knowledge of some of the performance problems with the Plaintiff.

2

9.   James Hartsfield, Director of Human Resources and Affirmative Action Officer
     Texas A&M University - Kingsville
     MSC 107
     700 University Blvd.
     Kingsville, Texas 78363
     (361) 593-2611

     Mr. Hartsfield has relevant information about Policies and Procedures at TAMU-K and
the Texas A&M University System, as well as Plaintiff's complaint of discrimination.

10.  Lt. Sandra Jefferson
     MSC 126
     700 University Blvd.
     Kingsville, Texas 78363
     (361) 593-2611

     Lt. Jefferson was a member of the 1999 interview/selection board for the position of
Sargent.  Lt. Jefferson also reprimanded Sgt. Connor about leaving the front desk unmanned.  Lt.
Jefferson also has knowledge of Plaintiff's performance. See also Defendants' Designation of
Expert Witnesses, a copy of which was served upon Plaintiff's counsel on or about August 1,
2000, a copy of which is attached hereto.

11.  Sgt. Ramon Longoria
     221 West 3rd Street
     Alice, Texas 78332
     (361) 664-9800

     Sgt. Longoria was a member of the 1998 interview/section board for the position of
Sargent.

12.  Dr. Gilda G. Medina
     (former Affirmative Action Officer/EEOC Officer for TAMU-K)
     225 West Wheeler Avenue
     Garden City, New York 11530

     Dr. Medina received the Plaintiff's original EEO complaint and can testify as to what actions
were taken on it.

3

13.   Sgt. Hiram Perez
      MSC 126
      700 University Blvd.
      Kingsville, Texas 78363
      (361) 593-2611

      Sgt. Hiram Perez was a member of the 1998 interview/selection board for the position of
Sergent. Sgt. Perez was also the shift supervisor during the period when Sgt. Connor left the front
office unmanned.

14.   Jesus Reyes
      Texas A&M University - Kingsville
      MSC 126
      700 University Blvd.
      Kingsville, Texas 78363
      (361) 593-2611

      Officer Reyes was an applicant for the 1998 position of Sargent.

15.   Maria M. (Molly) Sanchez
      Texas A&M University - Kingsville
      MSC 126
      700 University Blvd.
      Kingsville, Texas 78363
      (361) 593-2611

      Ms. Sanchez may testify to Plaintiff's job performance and or occasional inappropriate
actions while on duty at the workplace.

16.   Debbie Wilson
      Texas A&M University - Kingsville
      MSC 107
      700 University Blvd.
      Kingsville, Texas 78363
      (361) 593-3398

      Ms. Wilson has relevant information about Policies and Procedures at TAMU-K, as well as
Plaintiff's complaint of discrimination.

4

17.   Cynthia Ann Zapata
      Texas A&M University-Kingsville
      Campus Box 126
      Kingsville, Texas 78363
      (361) 593-2611

      Ms. Zapata was the dispatcher on duty when Officer Connor left the office after being told
that there was someone coming in to file a complaint.

18.   Defendants also list all witnesses listed by Plaintiff in his witness list filed with the Court in
      this civil action.

                              Respectfully submitted,

                              JOHN CORNYN
                              Attorney General of Texas

                              ANDY TAYLOR
                              First Assistant Attorney General

                              LINDA S. EADS
                              Deputy Attorney General for Litigation

                              TONI HUNTER
                              Chief, General Litigation Division


                              JOSE M. RANGEL
                              Texas Bar No. 16543550
                              Assistant Attorney General
                              General Litigation Division
                              P.O. Box 12548, Capitol Station
                              Austin, Texas 78711-2548
                              (512) 463-2120
                              (512) 320-0667 FAX

## **Certificate of Service**

I hereby certify that a true and correct copy of the foregoing instrument has been sent

via facsimile transmission and U.S. certified mail, return receipt requested, on February 2 3, 2001,

to:

Gay E. Gilson
LAW OFFICE OF GAY E. GILSON
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412

JOSE M. RANGEL
Assistant Attorney General

6

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR, | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. C-00-069 |
| TEXAS A&M UNIVERSITY-KINGSVILLE, | § | |
| HUMBERTO GARCIA, Individually and in | § | |
| his Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in his Official Capacity, | § | |
| *Defendants.* | § | |

---

## DEFENDANTS' PROPOSED
## JURY INSTRUCTIONS AND INTERROGATORIES

---

TO THE HONORABLE B. JANICE ELLINGTON:

NOW COMES TEXAS A&M UNIVERSITY–KINGSVILLE, HUMBERTO GARCIA,

and ROBERT BAZAN, Defendants herein, and hereby request that the Court include the

attached instructions and interrogatories in its charge to the jury.

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

TONI HUNTER, Chief
General Litigation Division

JOSE M. RANGEL
Assistant Attorney General
Texas Bar No. 16543550
Fed. Id No. 19859
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4264
(512) 320-0667 FAX

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been sent by

U.S. Certified Mail, on February 28, 2001, to:

Gay E. Gilson
LAW OFFICE OF GAY E. GILSON
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412

JOSE M. RANGEL
Assistant Attorney General

## INSTRUCTION NO. 1:  GENERAL CHARGE TO THE JURY

## MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.] or [You have heard the closing arguments of the attorneys.]  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did

1

CMzPDF - www.fasiss.com

something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

2

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field — he is called an expert witness — is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

3

**Authority:**

U.S. Fifth Circuit District Judges Association, <u>Pattern Jury Instructions, Civil Cases</u>, pp. 29-32 (West Publishing Co., St. Paul, Minn., 1997 Ed.).


GIVEN _____          GIVEN AS MODIFIED _____          REFUSED _____


_____          _____

DATE                     B. Janice Ellington
                         United States Magistrate Judge

4

## INSTRUCTION NO. 2:  DUTY TO DELIBERATE

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the other think differently, or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

**Authority:**

Fifth Circuit Pattern Jury Instructions: Civil, 2.11 (1997).

GIVEN _____          GIVEN AS MODIFIED ____          REFUSED _____

_____          _____
DATE                 B. Janice Ellington
                     United States Magistrate Judge

5

## INSTRUCTION NO. 3:  ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned in the evidence in the case.

**Authority:**

Section 73.11, Federal Jury Practice and Instructions.

GIVEN _____        GIVEN AS MODIFIED ____        REFUSED _____

_____        _____
DATE                B. Janice Ellington
                    United States Magistrate Judge

6

## INSTRUCTION NO. 4:  ALL PERSONS EQUAL BEFORE THE LAW

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A state agency and public officials are entitled to the same fair trial at your hands as a private individual. All persons, including state agencies and public officials, stand equal before the law, and are to be dealt with as equals in a court of justice.

**Authority:**

Section 71.05, Federal Jury Practice and Instructions

GIVEN _____          GIVEN AS MODIFIED ____          REFUSED _____

_____          _____

DATE                          B. Janice Ellington
                              United States Magistrate Judge

7

## INSTRUCTION NO. 5:  CREDIBILITY OF WITNESSES

In deciding the facts of this case, you will have to decide which witnesses to believe and which witnesses not to believe.  You may believe everything a witness says or only part of it or none of it.

In deciding what to believe, you may consider a number of factors, including the following:

1.      The witness's ability to see or hear or know, the things the witness testified to;

2.      The quality of the witness's memory;

3.      The witness's manner while testifying;

4.      Whether the witness was contradicted by anything the witness said or wrote before trial or by other evidence; and

5.      How reasonable was the witness's testimony when considered in the light of other evidence which you believe.

**Authority:**

Section 70.02, Devitt, Federal Jury Practice and Instructions.

GIVEN _____          GIVEN AS MODIFIED _____          REFUSED _____

_____          _____
DATE                                       B. Janice Ellington
                                              United States Magistrate Judge

8

## INSTRUCTION NO. 6:  MULTIPLE CLAIMS

You must not award compensatory damages more than once for the same injury.  For example, if the plaintiff prevails on two claims and establishes a dollar amount for his injuries, you must not award him any additional compensatory damages on each claim.  The plaintiff is only entitled to be made whole once, and may not recover more than he has lost.  Of course, if different injuries are attributed to the separate claims, then you must compensate the plaintiff fully for all of his injuries.

You may impose damages on a claim solely upon the defendant or defendants that you find are liable on that claim.  Although there are two (2) defendants in this case, it does not necessarily follow that if one is liable, all or any of the other also are liable.  Each defendant is entitled to fair, separate and individual consideration of his case without regard to your decision as to the other defendant.  If you find that only one defendant is responsible for a particular injury, then you must award damages for that injury only against that defendant.

**Authority:** Fifth Circuit Pattern Jury Instructions- Civil, 15.14 (1999)

GIVEN _____          GIVEN AS MODIFIED _____          REFUSED _____

DATE_____          _____
                       B. Janice Ellington
                       United States Magistrate Judge

9

## INSTRUCTION NO. 7: TITLE VII - INTENTIONAL DISCRIMINATION

Plaintiff, an Anglo male, claims that Defendant TAMUK discriminated against him on the basis of his national origin/race by failing to promote him and then terminating his employment with the University. Defendant denies that it treated the Plaintiff in a discriminatory manner because of Plaintiff's race or national origin. Defendant TAMUK asserts a legitimate, non-discriminatory reason for terminating Plaintiff from its employ. Specifically, TAMUK alleges that among a number of other things Connor was insubordinate, conducted inappropriate searches, left the dispatcher's post unattended and failed to carry out his duties competently. It is your responsibility to decide whether Plaintiff has proven his claims against TAMUK by a preponderance of the evidence.

In order to establish his claim against TAMUK, Connor has the burden of proving that the TAMUK's actions were the result of intentional discrimination because of Connor's race/national origin. The burden of persuasion that TAMUK intentionally discriminated against Connor remains at all times with Connor. Connor must prove by a preponderance of the credible evidence that the reasons stated by the TAMUK are false **and** that the real reason for the TAMUK's actions is discrimination based on Connor's race/national origin. The evidence offered by a Plaintiff to establish a prima facie case and to rebut the employer's reasons must be **substantial**, otherwise a jury cannot infer discriminatory intent.

If you find that TAMUK's decisions regarding Connor's employment were based on factors unrelated to discrimination, you must find in favor of TAMUK. Title VII is not a shield against harsh treatment in the workplace. Nor does the statute require the employer to have good cause for its decisions. The employer may take adverse action against an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, as long as the employer's action is not for a discriminatory reason.

10

**Authority:**

Section 104, Devitt, Federal Jury Practice and Instructions.
*St. Mary's Honor Center v. Hicks*, 509 U.S. 502,110, 113 S.Ct. 2742, 2747-2748 (1993);
*Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 370 (5th Cir. 1997)
*Lawrence v. Univ. of Tx. Med. Branch at Galveston*, 163 F.3d 309, 312 (5th Cir. 1999).

GIVEN _____          GIVEN AS MODIFIED ____          REFUSED _____


_____          _____
DATE                       B. Janice Ellington
                           United States Magistrate Judge

## INSTRUCTION NO. 8:  TITLE VII - PLAINTIFF'S BURDEN

One method of establishing that TAMUK's proffered reason is false is through evidence that similarly situated employees were treated differently.  However, Connor must show that the conduct for which he was terminated was "nearly identical" to that engaged in by others retained by TAMUK in this case.  To be probative of pretext, the conduct of more leniently disciplined employees must be of comparable seriousness to Connor's conduct.  Federal courts have explained that to be deemed similarly situated, the individual with whom Connor seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish the conduct. Moreover, Connor must establish that he performed his duties as competently as those to whom he compares himself.

**Authority**:

*Walton*, 119 F.3d at 371; *Essex v. United Parcel Service*, 111 F.3d 1304, 1311 (7th Cir. 1997)
*Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990)
*Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)
*Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1247 (6th Cir. 1995)
*Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1996) (en banc)

GIVEN _____          GIVEN AS MODIFIED ____          REFUSED _____


_____          _____
DATE                B. Janice Ellington
                    United States Magistrate Judge

12

## INSTRUCTION NO. 9:  TITLE VII RETALIATION

Plaintiff, Joseph Connor, claims that the Defendant TAMUK violated a section of Title VII law that prohibits retaliation against an employee for his having opposed an unlawful employment practice.  In order to prove a retaliation claim, Connor must establish that: 1) he actively opposed or complained about a discriminatory employment practice; 2) an adverse employment action by TAMUK followed; and 3) his opposition to the unlawful employment practice caused the adverse employment action.  Connor's opposition must have been directed at an unlawful employment practice of his employer, TAMUK, not an act of discrimination by a private individual.  Whether or not there were other reasons for TAMUK's actions, Connor will prevail only by proving that "but for" his opposition to an unlawful employment practice he would not have been subjected to the actions of which he complains.

You are further instructed that "adverse employment action" means ultimate employment decisions by TAMUK such as hiring, granting leave, discharging, promoting, and compensating. Ultimate employment action <u>does not</u> include events such as hostility from fellow employees, supervisor reprimands, disciplinary filings against the employee, and refusing employee's requests for purely lateral transfers.

<u>Authority</u>:

*Collins v. Baptist Memorial Geriatric Center,* 937 F.2d 190, 193 (5th Cir. 1991); *Hamilton v. Rodgers,* 791 F.2d 439, 441 (5th Cir. 1986); *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir. 1978); *Jack v. Texaco Research Center,* 743 F.2d 1129, 1131 (5th Cir. 1984); 42 U.S.C. §§ 2000e-2, 2000e-3.

GIVEN_____          GIVEN AS MODIFIED _____          REFUSED_____

DATE: _____          _____

                              B. Janice Ellington
                              United States Magistrate Judge

13

## INSTRUCTION NO. 10: 42 U.S.C. §1983 (GENERALLY)

A person may sue for an award of money damages against anyone who, "under color" of any state law or custom intentionally violates his rights under the Constitution of the United States.

Connor must prove each of the following by a preponderance of the evidence:

1. That the Defendant Humberto Garcia intentionally committed acts that violated one of the Plaintiff's federal constitutional rights that I will describe to you;

2. That in so doing Humberto Garcia acted "under color" of the authority of the State of Texas; and

3. That Humberto Garcia's acts were the legal cause of the Plaintiff's damages.

In this case it is not disputed that Garcia acted "under color" of state law.

Connor must also prove by a preponderance of the evidence that the act or failure to act by defendant Garcia was a cause-in-fact of the damage Connor suffered. An act or a failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. Connor must also prove by a preponderance of the evidence that the act or failure to act by Garcia was a proximate cause of the damage Connor suffered. An act or omission is a proximate cause of Connor's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

SOURCE:     Fifth Circuit Pattern Jury Instructions (adapted).


GIVEN _____          GIVEN AS MODIFIED _____          REFUSED _____


_____          _____
DATE                   B. Janice Ellington
                       United States Magistrate Judge

## INSTRUCTION NO. 11:  FIRST AMENDMENT RETALIATION

Plaintiff claims that because he exercised his protected freedom of speech guaranteed under the First Amendment he was terminated from his employment at TAMUK.

To prevail in his First Amendment claim Connor must show (1) that he exercised speech which was constitutionally protected, (2) that Defendant Humberto Garcia made the decision to terminate him, and (3) that this speech was a substantial motivating factor in the decision to terminate him.

To find that Connor's report of a police officer drinking on the job was a substantial motivating factor in the decision to terminate him, you must find more than merely that the termination followed the speech. You must find from a preponderance of the evidence that Defendant Garcia specifically made the decision to terminate Connor for the purpose of retaliating against Connor for the exercise of speech protected by the First Amendment.

If you find that Connor did exercise speech protected by the First Amendment, that Defendant Garcia made the decision to terminate, and that Connor's speech was a substantial motivating factor in the decision to terminate, you then must further find that Connor would have continued in his employment but for his exercise of his First Amendment rights.

That is, you must determine whether Defendant Garcia has shown by a preponderance of the evidence that the Plaintiff would have been discharged from his employment even if his report had not been considered, because of other work rule violations or other actions. If Defendant Garcia shows, by a preponderance of the evidence, that the Plaintiff would have been discharged in any event, then you should find for Defendant Garcia.

15

SOURCES:

*Board of County Comm'rs v. Umbehr*, 518 U.S. 668 (1996); Pickering *v. Board of Education*, 391 U.S. 563 (1968); *Perry v. Sindermann*, 408 U.S. 593 (1972); *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977); *Connick v. Meyer*, 461 U.S. 138 (1983); *Benningfield v. City of Houston*, 157 F.3d 369, (5th Cir. 1998); *Brady v. Houston Indep. School Dist.*, 113 F.3d 1419 (5th Cir. 1997); *Mayberry v. Dees*, 663 F.2d 502 (4th Cir. 1981).

GIVEN _____          GIVEN AS MODIFIED _____          REFUSED _____

_____          _____
DATE                         B. Janice Ellington
                                United States Magistrate Judge

## INSTRUCTION NO. 12: DAMAGES

Consider damages only if necessary. If Plaintiff has proven his claim against Defendants by a preponderance of the evidence, you must determine the damages to which Plaintiff is entitled. You should not interpret the fact that I have given instructions about Plaintiff's damages as an indication in any way that I believe that Plaintiff should, or should not, win this case. It is your task first to decide whether Defendants are liable. I am instructing you on damages only so that you will have guidance in the event you decide that Defendants are liable, and that Plaintiff is entitled to recover money from Defendants.

**Authority:**

Fifth Circuit Jury Instructions 15.1(1995)

GIVEN _____          GIVEN AS MODIFIED _____          REFUSED _____

_____          _____

DATE                 B. Janice Ellington
                     United States Magistrate Judge

17

## INSTRUCTION NO. 13 :   MITIGATION OF DAMAGES

A person who claims damages resulting from the wrongful act of another has a duty under the law to use reasonable diligence to mitigate—to avoid or minimize those damages.

If you find the defendants are liable and the plaintiff has suffered damages, the plaintiff may not recover for any item of damage which he could have avoided through reasonable effort.  If you find by a preponderance of the evidence the plaintiff unreasonably failed to take advantage of an opportunity to lessen his damages, you should deny him recovery for those damages which he would have avoided had he taken advantage of the opportunity.

You are the sole judge of whether the plaintiff acted reasonably in avoiding or minimizing his damages.  An injured plaintiff may not sit idly by when presented with an opportunity to reduce his damages.  However, he is not required to exercise unreasonable efforts or incur unreasonable expenses in mitigating the damages.  The defendants have the burden of proving the damages which the plaintiff could have mitigated.  In deciding whether to reduce the plaintiff's damages because of his failure to mitigate, you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the defendants have satisfied their burden of proving that the plaintiff's conduct was not reasonable.

**Authority:**

U.S. Fifth Circuit District Judges Association, Pattern Jury Instructions, Civil Cases, p. 202 (West Publishing Co., St. Paul, Minn., 1999 Ed.).

GIVEN _____               GIVEN AS MODIFIED _____               REFUSED _____


_____                    _____

DATE                            B. Janice Ellington
                                United States Magistrate Judge

18

## INSTRUCTION NO. 14:  COMPENSATORY DAMAGES

If you find that Defendant(s) are liable to Connor, you must determine an amount that is fair compensation for all of Connor's injuries.  Therefore, if you have answered "yes" to the prior Question, you must award compensatory damages.  The purpose of compensatory damages is to make the Plaintiff whole - that is, to compensate the Plaintiff for the damage that the Plaintiff has suffered.

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendant(s') allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less.  You should not award compensatory damages for speculative injuries, but only for those injuries which the Plaintiff has actually suffered or that the Plaintiff is reasonably likely to suffer in the future.

If you decide to award compensatory damages, you should be guided by dispassionate common sense.  Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork.  On the other hand, the law does not require that the Plaintiff prove the amount of her losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.  You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

A.   Past lost income (including fringe benefits);

B.   Future lost income (including fringe benefits);

C.  Past mental pain, humiliation, embarrassment, depression, anger, and emotional distress; and

D.  Future mental pain, humiliation, embarrassment, depression, anger, and emotional distress.

An award of future lost income necessarily requires that payment be made now for a loss that Plaintiff will not actually suffer until some future date. If you should find that Plaintiff is entitled to future damages, including future earnings, then you must determine the present worth in dollars of such future damages. You must reduce any award of future lost income to present value by considering the interest that the Plaintiff could earn on the amount of the award if he made a relatively risk-free investment. The reason why you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to the Plaintiff if he receives it today than if he received it in the future, when he would otherwise have earned it. It is more valuable because the Plaintiff can earn interest on it for the period of time between the date of the award and the date she would have earned the money. Thus you should adjust the amount of any award for future loss of income by the amount of interest that the Plaintiff can earn on that amount in the future. However, you must not make any adjustment to present value for any damages you may award for future mental pain, humiliation, embarrassment, depression, anger, and emotional distress.

SOURCES: U.S. FIFTH CIRCUIT DISTRICT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES), Instruction 15.2 (1995); 3 EDWARD J. DEVITT ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS §§ 104.06, 104A.11 (4th ed. Supp. 1995).

GIVEN _____          GIVEN AS MODIFIED _____          REFUSED _____


_____          _____

DATE                      B. Janice Ellington
                          United States Magistrate Judge

**INSTRUCTION NO. 14:  DAMAGES -- PUNITIVE**

If you find that defendants are liable for the plaintiff's injuries, you must award the plaintiff the compensatory damages that he has proven.  You also may award punitive damages, if Connor has proven that defendant Garcia acted with malice or willfulness or with callous and reckless indifference to the rights of others.  One acts willfully or with reckless indifference to the rights of others when he acts in disregard of a high and excessive degree of danger about which he knows or which would be apparent to a reasonable person in his condition.

If you determine that defendant Garcia's conduct was so shocking and offensive as to justify an award of punitive damages, you may exercise your discretion to award those damages. In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish a defendant for shocking conduct, and to deter the defendant and others from engaging in similar conduct in the future.  The law does not require you to award punitive damages, however.  If you decide to award punitive damages, you must use sound reason in setting the amount of the damages.  The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party.  However, the amount can be as large as you believe necessary to fulfill the purposes of punitive damages.  You may consider the financial resources of defendant Garcia  in fixing the amount of punitive damages and you may impose punitive damages only against defendant Garcia.

21

SOURCES:

*Pacific Mutual Life Insurance Co. v. Haslip*, 111 S.Ct. 1032 (1991); Fifth Circuit Pattern Jury
Instructions at §15.13.


GIVEN _____          GIVEN AS MODIFIED _____          REFUSED _____


_____          _____
DATE                      B. Janice Ellington
                          United States Magistrate Judge

22

ClibPDF - www.fastio.com

**INTERROGATORY NO. 1:**

Did Connor prove by a preponderance of the evidence that TAMUK intentionally discriminated against him by failing to promote him because of his race/national origin?

**Answer "yes" or "no."** _____

**INTERROGATORY NO. 2:**

Did Connor prove by a preponderance of the evidence that TAMUK retaliated against him for filing an EEOC charge?

**Answer "yes" or "no."** _____

**INTERROGATORY NO. 3:**

Did Connor prove by a preponderance of the evidence that Defendant Garcia retaliated against him for reporting that a police officer was drinking on the job?

**Answer "yes" or "no."** _____

If you have answered "yes" to Questions No. 1, 2 or 3, please answer Question 4, otherwise stop and do not answer any more questions:

**INTERROGATORY NO. 4:**

What sum of money, if any, will fairly and reasonably compensate Connor for any damages proximately caused by Defendants ?

Answer in dollars and cents, or "none."

A.   Past lost income (including fringe benefits):

    ANSWER:    $_____

B.   Future lost income (including fringe benefits), and reduced to present value:

    ANSWER:    $_____

C.   Past mental pain, humiliation, embarrassment, depression, anger, and emotional distress:

    ANSWER:    $_____

D.   Future mental pain, humiliation, embarrassment, depression, anger, and emotional distress:

    ANSWER:    $_____


If you have answered "yes" to Questions No. 3, please answer Question No. 5, otherwise stop:

**INTERROGATORY NO. 5:**

What sum of money, if any, will fairly and reasonably compensate Connor for any punitive damages

proximately caused by Garcia ?

    Answer in dollars and cents, or "none."

    ANSWER:    $_____

24

## END OF THE VERDICT FORM

We, the jury, unanimously answered the preceding questions by a preponderance of the evidence.


Date: _____   Foreperson: _____



Thank you, ladies and gentlemen, for the time you spent considering this case and for reaching your verdict. Yours duties are now complete and this form should be returned to the presiding judge.

25

## <u>VERDICT OF THE JURY</u>

We, the jury, have unanimously agreed to the answers to the attached questions and return

such answer in open court, and under the instructions of the Court, as our verdict in this

cause.


_____          _____
FOREPERSON                               DATE




                                         _____
                                         B. JANICE ELLINGTON
                                         United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR, | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. C-00-069 |
| TEXAS A&M UNIVERSITY-KINGSVILLE, | § | |
| HUMBERTO GARCIA, Individually and in | § | |
| his Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in his Official Capacity, | § | |
| *Defendants.* | § | |

## DEFENDANTS' PROPOSED VOIR DIRE QUESTIONS

Defendants request that this Court examine the venire panel in the following manner:

1.     The Plaintiff in this lawsuit is Joseph K. Connor. Do any of you know Mr.Connor? If you do, do you believe you would be more likely to favor the Plaintiff over the Defendants because of your friendship with or acquaintance with Mr. Connor?

2.     Do any of you know the Plaintiff's lawyers Ms. Gay E. Gilson or John E. Schulman? If you know any of these attorneys, please explain how you know them. Do any of you have a current or past relationship with any of these attorneys or their offices or with any members or employees of their offices? What is or was the nature of that relationship? Do you believe you would be more likely to favor the Plaintiff over the Defendants because of your friendship or acquaintance with Ms. Gilson or Mr. Schulman, or with anyone associated with their offices?

3.     Jose M. Rangel and Dona G. Hamilton work for the Office of the Texas Attorney General. They represent the Defendants. Do any of you know Mr. Rangel or Ms. Hamilton? If you know either of them, please explain how you know them. Do you believe you would be more likely

ChtPDF - www.fxsio.com

to favor the Defendants over the Plaintiff because of your friendship or acquaintance with Mr. Rangel or Ms. Hamilton or with anyone associated with their office?

4.      The following individuals may be called as witnesses by the Plaintiff: read from Plaintiff's list.   Do any of you know any of these individuals?  If so, how do you know them?  Do you believe you would be more likely to favor the Plaintiff over the Defendants because of your friendship or acquaintance with these individuals?

Additionally, the following individuals may be called by the Defendants: read from Defendants' list. Do any of you know any of these individuals?  If so, how do you know them?  Do you believe you would be more likely to favor the Defendants over the Plaintiff because of your friendship or acquaintance with these individuals?

5.      Does anyone have any knowledge of this case, other than what you have heard in this courtroom?

6.      Has anyone ever worked for Texas A&M University in Kingsville, or had a family member or close friend who worked there? Texas A&M University in Corpus Christi?  For any other state university or state agency?  When?  In what capacity?  Why did you (or they) leave?  Did you leave on good terms?  Would you return to work for them?

7.      Has anyone or a family member or friend applied for a job at Texas A&M University in Kingsville and been denied and not hired?  Would that influence you in this case in any way?

8.      Has anyone, or a family member or friend, had any experience with Texas A&M University in Kingsville other than through employment?  If so, please describe your or the family member's experience.

2

9.     Have any of you ever been denied employment or terminated from employment by a state agency or any other governmental agency including a university?

10.    Have you, or anyone in your family, relatives or friends had any experiences with Texas A&M University in Kingsville?  How might those experiences influence you in this case?

11.    Have any of you ever worked for any other governmental agency?  When?  In what capacity?  What were the circumstances of your departure?

12.    Has anyone read or heard any news coverage concerning Texas A&M University in Kingsville or any administrators, students or faculty there?  Will you be influenced in any way by what you've read or heard?

13.    Does anyone believe that state agencies generally engage in employment discrimination or other improper employment practices?  If so, please explain.

14.    Does anyone believe that Texas A&M University in Kingsville or the individual defendant - Humberto Garcia - must have done something wrong simply because we are here today?

15.    This trial will be a civil suit, as distinguished from a criminal prosecution.  It was filed by Joseph K. Connor,  the Plaintiff, and his attorney.  Is there anyone who has been a plaintiff in a civil lawsuit? If so, what kind of case? What was the outcome?

16.    Is there anyone who feels that a plaintiff who files a lawsuit must be right and deserves to get what he or she is asking for?

17.    Have you, any member of your family, or a close friend ever lost a job, been discharged from employment, either through termination or non-renewal of a contract?  Ever not been selected for a position you applied for?  If so, who was the employer?  When did this take place?  What was your reaction?  In this case, you will hear testimony that Joseph K. Connor was

3

terminated from employment with Texas A&M University in Kingsville.  Is there anything about your experience that would prevent you from being fair and impartial in this case?

18.    Have you or any member of your family ever filed a claim or complaint concerning discrimination or violation of your civil rights?  Are you or any member of your family contemplating the filing of such a claim or complaint? (If yes to either, what are the details of the complaint?)

19.    Has anyone had an allegation of discrimination or retaliation filed against him or her? When? What happened to the complaint?

20.    Has anyone participated in an investigation of a complaint involving discrimination or retaliation?  If so, what are the details?

21.    Does anyone believe that a person should just be given a position, promotion or raise solely because they worked at the institution for a long period of time?

22.    Are you or any member of your family in an occupation where you have responsibility for evaluating and/or making employment decisions about individuals?  If so, please describe the nature of your position in detail.

23.    Does anyone believe they have been discriminated or retaliated against on the job?

24.    Have you ever been accused of misconduct by your supervisor?  Please explain the circumstances and how you felt?

25.    Have you ever served on a civil or criminal jury before?  If your answer is yes, please describe the type of case and state what the verdict was.

26.    Have you or any member of your family ever sued someone or been sued by someone?  If so, please describe in detail the nature of the lawsuit(s) and its outcome.

4

27.     Are you or any member of your family in an occupation where you have responsibility for evaluating and/or making employment decisions about individuals? If so, please describe the nature of your position in detail.

28.     Does any member of the panel feel a prejudice towards or a leaning for or against an individual, public servant or public institution which has had a lawsuit brought against him, her or it to recover money damages for alleged injuries based upon violation of civil rights?

29.     Is there anyone who feels that, because one of the Defendants is a state university and the other Defendant is a former official of a state university, the Plaintiff's allegations against these Defendants are probably true? Is there anyone who would be more likely to award money to the Plaintiff because the Defendants are a state university and a former state university official?

30.     Have any of you ever been terminated, denied employment, disciplined, transferred out of a job or denied a raise or a promotion in a way that you feel was unfair? If so, please explain.

31.     Have any of you ever filed a grievance or complaint against one of your employers? What was the subject of the grievance or complaint? Was the matter resolved to your satisfaction? Did it result in any legal action?

32.     Is there anyone who believes that he or she has ever been discriminated or retaliated against by an employer because of their race?

33.     Has anyone had dealings with the Office of the Attorney General of Texas? If yes, what were those dealings? Did your dealings with the Attorney General's Office influence your feelings about people who work for the Texas Attorney General? If so, can you put aside those feelings and agree not to hold those feelings against the Defendants or their attorneys?

5

34.     In this lawsuit, the Plaintiff will claim that his civil rights were violated.  Is there anyone on the panel who belongs to any organization which has as one of its goals the protection of civil rights?  Please name the organization.

35.     Is there anyone who has a close family member who is a member of, or supports such an organization?

36.     Would this affiliation on the part of yourself, your friends or your family make you more likely to favor the Plaintiff?

37.     Is there anyone who has had any legal training?  Of what sort?  Did you attend law school?  Which one?

38.     The Court will instruct you as to the law in this case, including the nature of the rights the Plaintiff may or may not have and what the Plaintiff must prove to show a violation of his rights.  It may be that the Court's instructions and definitions will be different from your own views.  For example, you may believe that what happened to the Plaintiff is not fair, or that Texas A&M University in Kingsville or Mr. Humberto Garcia did not use good judgment, even though you may find that Plaintiff's rights were not violated.  If that were the case -- if you found there was no violation of Mr. Connor's rights, but did not agree with the Defendants' decisions with regard to Mr. Connor, would you still be able to find for the Defendants?  Is there anyone who could not follow the Court's instructions rather than following your own feelings, in case of such a conflict?

39.     The Court will instruct you that in order to recover, the Plaintiff must prove his case by a preponderance of the evidence.  This means that, when you consider all the evidence, you must believe that each point of Mr. Connor's case is more likely to be true than not true.  Is there anyone

6

who would not require the Plaintiff to show all these things by a preponderance of the evidence? Is there anyone who could not follow the Court's instruction on this?

40.     You will be instructed that in order to recover money, the Plaintiff must prove, by a preponderance of the evidence, both that his rights were violated and that he was damaged by that violation. Does anyone believe that if Plaintiff's rights were violated, he should get some money regardless of whether he suffered any harm as a result of this violation?

41.     The Plaintiff in this case will present his side of the story first. Is there anyone who feels that they could not wait, or need not wait for the Defendants to present their side of the story before reaching a conclusion?

42.     When the attorneys speak, what they say is not evidence. Will you have a problem listening and reviewing the evidence and basing your verdict in this case solely on the evidence presented?

43.     Do you know of any reason why you may be prejudiced in favor of the Plaintiff because of the nature of the lawsuit, the parties involved or for any other reason?

44.     Has anyone already formed or expressed an opinion that the Plaintiff should recover from the Defendants, either generally or in this specific case?

45.     Putting yourself for a moment in the Defendants' position, would you feel, as a Defendant, that you would not want someone as a juror who has your present state of mind?

46.     Is there anyone who for any other reason feels he or she should not be a member of this jury? Is there anyone who has any feeling or prejudice, whether mentioned or not, which would make you tend to favor the Plaintiff over the Defendants?

7

47.    Can you think of any other matter not touched upon which you should call to the Court's attention that may have some bearing on your qualifications as a juror, or that may prevent you from rendering a fair and impartial verdict in this case?

8

CExPDF – www.fexita.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. C-00-69 |
| | § | |
| TEXAS A&M UNIVERSITY - KINGSVILLE; | § | **JURY TRIAL REQUESTED** |
| HUMBERTO GARCIA, Individually and in | § | |
| His Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in His Official Capacity | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS AND
## SPECIAL INTERROGATORIES

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW PLAINTIFF, JOSEPH CONNOR, respectfully submitting his proposed jury

instructions for the jury panel as follows:

A.      Plaintiff requests the Court to give the following Instructions from the United States Court

of Appeals Fifth Judicial Circuit Pattern Jury Instructions, 1999, Civil Cases:

| | |
|---|---|
| 2.3 | Stipulations of Fact; |
| 2.16 | Impeachment by Witness' Inconsistent Statements; |
| 2.18 | Consideration of the Evidence |
| 2.23 | Deposition Testimony |
| 10.4— | Civil Rights; 42 U.S.C. §1983 (Adverse Employment Decision, Exercise of First Amendment Rights), |
| 15.2 — | Compensatory Damages; |
| 15.3 — | Calculation of Past and Future Damages; and |
| 15.13 — | Punitive Damages. |

B.      Plaintiff also requests the Court to give him the following proposed instructions.

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 1

Re:     Plaintiff's and Defendant's Claims Generally

Plaintiff, Joseph K. Connor's claim in this case is made in part against his employer, Texas A&M University - Kingsville, acting through its management and supervisory personnel.  It is also made in part against the former Chief of the University's Police Department, Humberto Garcia, individually.

Mr. Connor contends that his termination of June 1999 was in violation of one or more of his rights protected by federal law.  The Defendants deny Plaintiff's allegations and contend that all of their actions were within the applicable laws.

The following instructions provide you with the legal basis for the claims made by Plaintiff and the defenses raised by the Defendants.  They also provide you with guidance on how to look at or evaluate the evidence presented to you in evaluating your answers to the jury questions you will be given to answer.

I am going to instruct you on the substantive law pertaining to a number of different claims by the Plaintiff, as follows:

1)      illegal retaliation for opposing what an employee reasonably believes to be discrimination in the workplace;
2)      illegal discrimination based upon race; and
3)      illegal retaliation for protected First Amendment free speech about matters of public interest.

I will also give you instructions on the elements of damages available under these claims.

Just because I am instructing you on these claims does not mean that the Court has an opinion about the validity of the claims.  Whether the Defendants violated any of Plaintiff's rights is a question of fact for you, the jury, to decide according to the law as I have charged you.

### COURT'S RULING

given _____          given as modified     _____   refused     _____


Date: _____          _____
                                        UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S REQUESTED INSTRUCTION NO. 2**

Re:   <u>General Instructions Regarding Illegal Retaliation for Opposing Discrimination</u>

Federal civil rights law forbids employer retaliation against an employee who opposes what he reasonably believes to be discrimination in the workplace.

To establish a claim under this anti-retaliation law, the Plaintiff must prove by a preponderance of the evidence that his opposition to what he reasonably believed was discrimination in the workplace was a determining factor, or a factor that made a difference in the Defendants' decision to terminate the Plaintiff. This means that the evidence must show that, but for hte Plaintiff's acting as an opponent of discrimination, the Plaintiff would not have been terminated. The phrase "determining factor" does not mean that it was the only motivation for the Defendants' decision to discharge the Plaintiff. However, it must have been a factor that actually led to the challenged decision in order for the Plaintiff to prevail.

In other words, as part of your deliberation, you must also consider any legitimate, nondiscriminatory reasons or explanations stated by the Defendants for their decision. If you determine that the Defendants have stated such reasons and believe them to be true, then you must decide in favor of the Defendants. If you feel that the Plaintiff has shown that any of the stated reasons is not true or pretextual, then you may take this into account in determining whether the stated reason merely served as an excuse for discriminating against the Plaintiff because of his opposition to conduct he reasonably believed was discriminatory. Under these laws, the burden is always on the Plaintiff to prove that his termination was because of his opposition to what he reasonably believed to be discriminatory conditions in the workplace.

Authority

With respect to the reasonable belief standard regarding retaliation, see Long v. Eastfield College, 88 F.3d 300 (5th Cir. 1996) (Garwood, E. Garza, DeMoss, concurring in part and dissenting in part); and Payne v. McLemore's Wholesale and Retail Stores, 654 F.2d 1130, 1140 (5th Cir.1981).

**COURT'S RULING**

given _____      given as modified _____      refused _____

Date: _____      _____
                                      UNITED STATES DISTRICT JUDGE

## PLAINTIFF'S REQUESTED INSTRUCTIONS NOS. 3 AND 3A

**Instruction No. 3.** Re. <u>General Instruction on 42 U.S.C. §1983</u>

Other claims made by the Plaintiff are Constitutional claims under the Bill of Rights, which is given effect through a federal civil rights law commonly known as "Section 1983".

One way the Plaintiff can establish a claim under §1983 in this case is to prove by a preponderance of the evidence that his termination was motivated by the exercise of a specific Constitutional right, in this case freedom of speech, as that right is defined and applied by interpretations of the United Stated Supreme Court.

### COURT'S RULING

given _____        given as modified   _____     refused        _____

Date: _____          _____
                                          UNITED STATES DISTRICT JUDGE

**Instruction No. 3A** Re: <u>Burden Shifting in First Amendment Claim</u>

Unlike the situation in all of Plaintiff's other claims in this case with respect to the First Amendment freedom of speech claim, the Supreme Court of the United States has established a shifting burden of proof. If the Plaintiff proves that one or more adverse actions was taken against him because of protected free speech activity, then the burden of proof shifts from the Plaintiff to the Defendants. Then the Defendants must then prove to you that the same action or actions would have been taken in the absence of protected free speech activity in order to defeat the Plaintiff's claims.

Authority

Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977); and Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Industrial Development Agency, 77 F.3d 26, 31 (2nd Cir.1996).

### COURT'S RULING

given _____        given as modified   _____     refused        _____

Date: _____          _____
                                          UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S REQUESTED INSTRUCTION NO. 4**

Re: <u>Deprivation of Constitutional Right – First Amendment</u>

A governmental entity, such as a city, does not have a right to terminate an employee because the employee has engaged in protected speech. This is because to permit such conduct would have a chilling effect upon exercise of the employee's right to freedom of speech as guaranteed by the Constitution of the United States.

This does not mean, however, that any person who speaks critically of his employer or supervisor is thereafter, insulated against a termination. The test must be whether the protected speech was, or was not, a motivating factor in making an otherwise completely legitimate transfer.

That is the question for you to decide in this case: whether JOSEPH K. CONNOR was terminated because of his speech or for other legitimate reasons. Would he have been terminated if he had not spoken as he did?

Authority

Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977); see McGill v. Board of Education, 602 F. 2d 774, 770 (7th Cir. 1979).

**COURT'S RULING**

given  _____        given as modified        _____        refused        _____

Date: _____        _____
                                                UNITED STATES DISTRICT JUDGE

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 5

Re: _ Special Instruction with Regard to Equal Employment Opportunities Act, Title VII of Civil
Rights Act of 1964, as Amended – Evidence Required in Mixed Motives Case

Plaintiff JOSEPH K. CONNOR presents his claim under Title VII of the Civil Rights Act
of 1964, as amended, solely against his employer Texas A&M University - Kingsville. Title VII of
the Civil Rights Act of 1964, as amended, prohibits retaliation by employers based upon opposition
to discrimination and prohibits discrimination based upon race. Title VII as amended in 1991
provides that if discrimination was a "motivating factor", even in part, for an employment practice
or decision, it is unlawful even though other factors may also have motivated the practice or
decision.

Authority

Title VII of the Civil Rights Act of 1964, as amended. With respect to the mixed motive
instruction, see Radabaugh v. Zip Feed Mills, 997 F. 2d 444, 62 F.E.P. 438 (CA8 1993). Also see
Tyler v. Bethlehem Steel Corp., 958 F.2d 1176 (2nd Cir. 1992).

### COURT'S RULING

given _____          given as modified     _____     refused          _____

Date: _____          _____
                                                 UNITED STATES DISTRICT JUDGE

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 6

Re:   Special Instructions with Regard to Recovery of Damages Under the Equal Employment
      Opportunities Act, Title VII of Civil Rights Act of 1964, as Amended

A victim of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, is entitled to recover lost pay, lost benefits, and "compensatory damages". "Compensatory damages" are defined as follows: "Future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." If Plaintiff JOSEPH K. CONNOR has proved discrimination by retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, he may recover the damages described above or any of them justified by the evidence from Defendant Texas A&M University – Kingsville.

Authority

Title VII of the Civil Rights Act of 1964, as amended.  Definition of "compensatory damages", see 42 U.S.C. § 1981 a(b)(3).

### COURT'S RULING

given _____          given as modified _____          refused _____

Date: _____          _____
                                        UNITED STATES DISTRICT JUDGE

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 7

Re: <u>Special Instructions with Regard to Actions Taken Under Color of State Law</u>

Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The parties to this litigation have provided a stipulation that at all times relevant to the underlying facts, the actions and conduct of the Defendants qualify as "state action" or action taken under color of state law.    Therefore, you need not concern yourself with this issue and the Court instructs you that you must honor the parties' stipulation.

Authority

Amended Joint Pretrial Order, Agreed Propositions of Law, No

### COURT'S RULING

given _____          given as modified _____    refused _____

Date: _____        _____
                                      UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S REQUESTED INSTRUCTION NO. 8:**

Re:   <u>Title VII Reverse Discrimination Claim - "Race Discrimination"</u>

It is unlawful employment practice for an employer to fail or refuse to hire to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, or national origin.

**COURT'S RULING**

given   _____          given as modified   _____   refused   _____


Date: _____        _____
                                     UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S REQUESTED INSTRUCTION NO. 9:**

Re:     "Protected Class - Status"

An individual is protected from race discrimination under Title VII if his employer discriminated against him with respect to the terms and conditions of his employment because of his race, color or national origin.

### COURT'S RULING

given  _____        given as modified    _____    refused        _____

Date: _____        _____
                                        UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 10:**

Re:    <u>Reverse Discrimination</u>

It is prohibited to commit race discrimination against all people, including members of the majority.

**COURT'S RULING**

given   _____     given as modified   _____   refused   _____

Date: _____     _____
                                                               UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 11:**

Re:     <u>Plaintiff's burden</u>

The burden of persuasion remains at all times with Plaintiff.

## COURT'S RULING

given _____     given as modified _____     refused _____


Date: _____     _____
                                           UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 12**:

Re:     <u>Continuing Violation</u>

Under the continuing violation doctrine, allegations of conduct occurring prior to the limitations period are actionable if the complainant can show that they are part of a series of related acts against the complainant.  To establish a continuing violation, one or more of the allegedly discriminatory acts must fall within the limitations period.

### COURT'S RULING

given     _____          given as modified     _____     refused     _____


Date: _____          _____
                                        UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 13:**

Re:    <u>Disparate Treatment</u>

Plaintiff may prove that his termination was because of his race by showing that his race played a motivating role in, or contributed to, the employer's decision.

Plaintiff may prove that the forbidden animus was a motivating factor through presentation of either "direct" or "circumstantial" evidence.  This is in addition to the McDonnell Douglas indirect or burden-shifting method of proof.

**COURT'S RULING**

given  _____          given as modified    _____      refused        _____


Date: _____          _____
                                         UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 14:**

Re:   <u>Discriminatory Animus- Different Treatment</u>

A Plaintiff under Title VII may raise an inference of discriminatory animus by offering evidence comparing himself or herself to similarly situated individuals who are not a member of that protected class, who are treated more favorably.

## COURT'S RULING

given  _____          given as modified  _____     refused     _____


Date: _____          _____
                                        UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 15:**

Re:    <u>Falsity of Reason - Pretext</u>

Once Defendant articulates a legitimate, nondiscriminatory reason for adversely affecting Plaintiff's employment, Plaintiff can establish pretext by showing that Defendant's explanation is unworthy of credence.

Or

Plaintiff can establish pretext by showing that a discriminatory reason more likely motivated the employer.

**COURT'S RULING**

given  _____        given as modified    _____    refused        _____


Date: _____        _____
                                      UNITED STATES DISTRICT JUDGE

## PLAINTIFF'S PROPOSED INSTRUCTION NO. 16:

Re:   Retaliation - Prima Facie Case

An employer may not discriminate against any of its employees or applicants for employment because such individual has opposed any practice made unlawful by Title VII, or because such individual has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or litigation under Title VII.

To demonstrate a prima facie case of retaliation, a Title VII plaintiff must show:

1.     He engaged in statutorily protected activity.

2.     He suffered an adverse employment action; and

3.     A causal link existed between the protected activity and the adverse action.

The burden then shifts to Defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If Defendant does so, Plaintiff then bears the burden of showing that the employer's proffered reason is pretextual.

### COURT'S RULING

given   _____        given as modified       _____      refused       _____


Date: _____          _____

                                        UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 17:**

Re:      <u>Protected Activity</u>

Title VII provides that an employer may not discriminate against an employee on the basis that the employee "has opposed any practice made an unlawful employment practice," or "participated in a proceeding under Title VII."

**COURT'S RULING**

given  _____          given as modified  _____   refused   _____


Date: _____          _____
                                                                UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S PROPOSED INSTRUCTION NO. 18:**

Re:     <u>Adverse Action</u>

Generally, a demotion, salary decrease, undesirable reassignment or termination constitutes an adverse employment action.  However, retaliatory conduct may consist of action "less severe than outright discharge."

<b>COURT'S RULING</b>

given  _____          given as modified      _____      refused      _____


Date: _____          _____
                                                    UNITED STATES DISTRICT JUDGE

**PLAINTIFF'S REQUESTED SPECIAL INTERROGATORY NO. 1**

Do you find from a preponderance of the evidence with respect to Humberto Garcia that plaintiff's statements to Humberto Garcia were a substantial or motivating factor in the decision to terminate Plaintiff?

Answer "Yes" or "No"

_____

If your answer to Special Interrogatory No. 1 is "Yes," then answer the next interrogatory; if you did not answer "Yes," to this question go to Special Interrogatory No. *.

## PLAINTIFF'S REQUESTED SPECIAL INTERROGATORY NO. 2

Do you find from a preponderance of the evidence that Humberto Garcia had such a personal involvement in the termination decision that he was a cause of the termination of Plaintiff?

Answer "Yes" or "No"

_____

Proceed to answer the next special interrogatory.

## PLAINTIFF'S REQUESTED SPECIAL INTERROGATORY NO. 3

What sum of money, if any, do you find from a preponderance of the evidence will compensate the Plaintiff for his damages, if any.

Answer in dollars and cents or zero.

Answer: _____

**PLAINTIFF'S REQUESTED SPECIAL INTERROGATORY NO. 4**

What amount of punitive damages, if any, do you find from a preponderance of the evidence should be assessed against the defendant Humberto Garcia?

Answer in dollars and cents or zero

Answer: _____

Respectfully submitted,

Law Office of Gay E. Gilson
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412
Telephone: (361) 814-0573
Facsimile: (361) 814-0674

By: _____
GAY E. GILSON
SBN 00784131/Fed.I.D. 16385
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded on February 28, 2001 by certified mail, return receipt requested to:

William T. Deane                                    Via CMRRR # Z 189 456 072
Jose Rangel
Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548


_____
Gay E. Gilson

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. C-00-069 |
| TEXAS A&M UNIVERSITY-KINGSVILLE, | § | |
| HUMBERTO GARCIA, Individually and in | § | |
| his Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in his Official Capacity, | § | |
| Defendants. | § | |

## DEFENDANTS' PROPOSED TRIAL EXHIBIT LIST

| EXHIBIT NO. | DESCRIPTION | ADMITTED |
|---|---|---|
| D-1 | Plaintiff's Application for License/Employment Report (3/3/92) | |
| D-2 | Interview Referral Form (2/11/92) | |
| D-3 | Request for Form 500 – new hire for Plaintiff (3/5/92) | |
| D-4 | Acknowledgment of Receipt – Plaintiff received copy of Employee Handbook on 3/25/97 | |
| D-5 | Plaintiff's Employee Evaluation Form (5/12/92) – no evaluation necessary, as Plaintiff was on probation | |
| D-6 | Plaintiff's Employee Evaluation Form (4/19/93) | |
| D-7 | Plaintiff's Employee Evaluation Form (3/24/95) | |
| D-8 | Plaintiff's Employee Evaluation Form (5/2/96) (Connor refused to sign) | |
| D-9 | Plaintiff's Employee Evaluation Form (4/23/97) | |
| D-10 | Plaintiff's Performance Appraisal Form (3/12/98) | |
| D-11 | Plaintiff's Performance Appraisal Form (3/11/99) | |
| D-12 | Salvador Franco's Application for Staff Employment with Texas A&M University - Kingsville (6/9/97) | |

| EXHIBIT NO. | DESCRIPTION | ADMITTED |
|---|---|---|
| D-13 | Salvador Franco's Employee Evaluation Form (9/30/97) | |
| D-14 | Franco's Employee Evaluation Form (3/12/98) | |
| D-15 | Franco's Performance Appraisal Form (5/26/99) | |
| D-16 | Franco's Performance Appraisal Form (1/27/00) | |
| D-17 | Franco's certificates of completion, recognition, accomplishments etc. | |
| D-18 | Pedro Cavazos' Application for Staff Employment with Texas A&M University - Kingsville (5/13/97) | |
| D-19 | Pedro Cavazos' Employee Evaluation Form (9/25/97) | |
| D-20 | Cavazos' Performance Appraisal Form (3/11/98) | |
| D-21 | Cavazos' Performance Appraisal Form (1999) | |
| D-22 | Cavazos' Performance Appraisal Form (2000) | |
| D-23 | Cavazos' certificates of accomplishment awarded to Cavazos | |
| D-24 | News article regarding Cavazos' receiving award for being first in class | |
| D-25 | Cavazos' GED certificate | |
| D-26 | Sandra Jefferson's Performance Appraisal Form (2000) (Interim Dir.) | |
| D-27 | Jefferson's Performance Appraisal Form (1999) (Lieutenant) | |
| D-28 | Jefferson's Performance Appraisal Form (1998) (Lieutenant) | |
| D-29 | Jefferson's Employee Evaluation Form (1997) (Lieutenant) | |
| D-30 | Jefferson's Employee Evaluation Form (1996) (Lieutenant) | |
| D-31 | Jefferson's Employee Evaluation Form (1995) (Lieutenant) | |
| D-32 | 12/19/96 letter from Jim Hartsfield, Director of Personnel, to Christopher Florence | |
| D-33 | 8/17/97 memo from Chris Florence to Chief Garcia, regarding his resignation – effective 8/31/97 | |
| D-34 | 2 pictures of Plaintiff sleeping in patrol car | |

| EXHIBIT NO. | DESCRIPTION | ADMITTED |
|---|---|---|
| D-35 | 5/26/92 Officer's Report by Sgt. R. Bazan, regarding dispatchers' complaints about Plaintiff | |
| D-36 | 9/29/92 Officer's Report made by Sgt. A. Mata, regarding Plaintiff's contact with Becky Pearson | |
| D-37 | 10/1/92 letter of "Official Reprimand" regarding Plaintiff | |
| D-38 | 12/8/95 memo from Sandra K. Brown, Comptroller, to Humberto Garcia, Univ. Police Chief, regarding Plaintiff's escort of Ms. Kieschnick, Kleberk First National Bank employee; Plaintiff left employee with over $6000 in car while Plaintiff ran into station to get message | |
| D-39 | 8/20/96 Officer's Report by R.G. Utley, regarding Plaintiff's claim that Sgt. Quinones was sent hme without pay | |
| D-40 | Report of Sgt. Longoria regarding weekend of 9/5/98 and 9/7/98 – 2 incidents: Plaintiff failed to respond to radio calls, and Plaintiff made sexual comment to Janet Briones | |
| D-41 | 9/27/98 Officer's Report by Cynthia Zapata, regarding Plaintiff's attempted refusal to not respond to complaint | |
| D-42 | 9/28/98 Officer's Report by Sgt. R. Bazan, regarding Plaintiff's attempted refusal to not respond to complaint | |
| D-43 | 9/29/98 memo from Sgt. Salvador Franco to Chief Humberto Garcia re. Plaintiff – Plaintiff's refusal to correct 2 reports | |
| D-44 | 4/1/99 Officer's Report by Sgt. Hiram Perez, regarding seizure of property | |
| D-45 | 4/21/99 Room Entry Notice, addressed to Manuel Galindo | |
| D-46 | 4/21/99 Incident Report, regarding CDs | |
| D-47 | 4/21/99 Officer's Report by Plaintiff, regarding theft of music CDs instudent's room | |
| D-48 | 4/24/99 Memo from Bert Garcia, Chief UPD, to Plaintiff, re. Personal Conference – seizure of personal property was illegal because there was no consent by student; property was not properly secured and marked as it was left in Plaintiff's locker. This memo serves as Official Reprimand | |

| EXHIBIT NO. | DESCRIPTION | ADMITTED |
|---|---|---|
| D-49 | 4/26/99 Memo from Bert Garcia, Chief UPD, to Louis Everett, Patrolman UPD, re. Personal Conference – Garcia and Plaintiff worked together without warrant and without consent to seize property | |
| D-50 | 4/26/99 Memo from Sgt. S.G. Franco to Plaintiff, re. Letter of Reprimand – Plaintiff failed to prepare report on theft | |
| D-51 | 4/29/99 note from Joel Rodriguez to Crispin, regarding Office Mgr. Ruben Lopez's filing complaint against Plaintiff | |
| D-52 | 5/5/99 Officer's Report by Bazan – Plaintiff whited out case number for incident involving stolen CDs in dorm room, saying that he had already taken care of it | |
| D-53 | 5/5/99 Official Reprimand letter to Plaintiff, which also places him on 6 month Probation | |
| D-54 | 5/16/99 Officer's Report by L. Everett, regarding Plaintiff's leaving the front dispatch office unattended | |
| D-55 | 5/24/99 Officer's Report by Lt. Sandra Jefferson, complaining that Plaintiff left the front dispatch office unattended | |
| D-56 | Undated hand-written note addressed to Plaintiff, regarding Plaintiff's request to have Sheriff Winston Kelly's constables make traffic stops | |
| D-57 | Texas A&M University - Kingsville Work Related Incident Report, Plaintiff's injury on 5/9/98 | |
| D-58 | 6/4/99 Note signed by Chief Humberto Garcia to Plaintiff; with Conner history attached | |
| D-59 | Texas Commission on Law Enforcement; Report of Resignation or Separation of License Holder (6/4/99) | |
| D-60 | 5/10/99 Charge of Discrimination | |
| D-61 | 5/18/99 Notice of Charge of Discrimination | |
| D-62 | 5/10/99 Memo from Plaintiff to Jimmy Hartsfield, Director of Human Resources, serving as official complaint | |
| D-63 | 5/15/99 Employee Complaint and Appeal Form – prepared by Plaintiff | |

| EXHIBIT NO. | DESCRIPTION | ADMITTED |
|---|---|---|
| D-64 | 5/18/99 Memorandum from Dr. Gilda G. Medina, current EEO Officer, to Plaintiff, re. Plaintiff's 5/10 memo – asks if Plaintiff plans to not use the university's internal grievance policy | |
| D-65 | 5/24/99 Memorandum from Gilda G. Medina to Plaintiff – she received Plaintiff's 5/15/99 complaint; Medina returns the complaint because Plaintiff's complaint of "less time and with the company and experience" are not valid considerations; gives Plaintiff 10 days to resubmit | |
| D-66 | 5/25/99 Memorandum from Gilda G. Medina to Plaintiff – his internal grievance will be suspended pending outcome of his EEOC grievance | |
| D-67 | Hand-written note from Sgt. Perez, who was asked by Plaintiff if race was considered in selection of sargeants | |
| D-68 | 6/11/99 Texas A&M University - Kingsville Employee Complaint and Appeal Form, Plaintiff writes that he was terminated on 6/4/99 for an alleged violation of a rule, but he believes it was discrimination | |
| D-69 | 6/17/99 memo from Jim Hartsfield, Human Resource Director, to Plaintiff, re. complaint and appeal, wanting to schedule meeting with Plaintiff but he advised Debbie Wilson to contact his attorney | |
| D-70 | Procedure 33.01 K1.01 Non-faculty Employee Complaint and Appeal | |
| D-71 | 33.01.02 K1 Non-faculty Employee Complaint and Appeal Rule | |
| D-72 | 3/5/92 500R form, creating new hire for Plaintiff | |
| D-73 | 8/5/95 500R form | |
| D-74 | 10/10/95 500R form, increasing salary | |
| D-75 | 7/31/96 500T form | |
| D-76 | 8/25/97 500R form | |
| D-77 | 6/4/99 Budget/Payroll/Personnel Action form | |
| D-78 | 6/11/99 500R form, involuntary termination | |
| D-79 | Postcard to Antonio Gonzalez, Jr., Director of Texas A&I Univ. Police Department, requesting information | |
| D-80 | Evaluations of Humberto Garcia | |
| D-81 | Evaluations of Robert Bazan | |

| EXHIBIT NO. | DESCRIPTION | ADMITTED |
|---|---|---|
| D-82 | Robert Bazan's Honorable Discharge from U.S. Army and related recognition | |
| D-83 | Rules and Regulations and Policies and Procedures of Texas A&M University - Kingsville applicable to University Police Department | |
| D-84 | Robert Nash's suspension from employment | |
| D-85 | Nash's resignation from employment | |
| D-86 | Report regarding Nash's alleged illegal activity | |
| D-87 | | |
| D-88 | | |
| D-89 | | |
| D-90 | | |
| D-91 | | |
| D-92 | | |
| D-93 | | |
| D-94 | | |
| D-95 | | |
| D-96 | | |
| D-97 | | |
| D-98 | | |
| D-99 | | |
| D-100 | | |

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

TONI HUNTER
Chief, General Litigation Division


JOSE M. RANGEL
Texas Bar No. 16543550
Fed. Id No. 19859
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been sent via facsimile

transmission on February 28, 2001, to:

Gay E. Gilson
LAW OFFICE OF GAY E. GILSON
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412


JOSE M. RANGEL
Assistant Attorney General

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JOSEPH K. CONNOR                            §
                                            §
        Plaintiff                           §
                                            §
vs.                                         §   Civil Action No. C-00-69
                                            §
TEXAS A&M UNIVERSITY - KINGSVILLE; §   **JURY TRIAL REQUESTED**
HUMBERTO GARCIA, Individually and in        §
His Official Capacity; and ROBERT BAZAN,    §
Individually and in His Official Capacity    §
                                            §
        Defendants.                         §

### PLAINTIFF'S PROPOSED QUESTIONS FOR VOIR DIRE EXAMINATION

The following are plaintiff's proposed questions for voir dire examination.

1.      Does anyone know the Plaintiff in this case, Joseph K. Connor?

2.      Does anyone know the Plaintiff's wife, Susan Connor?

3.      Does anyone know one of the Defendants in this case, Humberto Garcia?

4.      Has anyone ever been employed by the Texas A&M University System?

5.      Has anyone every been employed at Texas A&M University - Kingsville?

6.      Does anyone have a relative or friend that has been or is employed by the Texas A&M University System?

7.      Does anyone have a relative or friend that has been or is employed by Texas A&M University - Kingsville?

8.      Does anyone know any of the following persons:

        1.      Daniel Hernandez
        2.      Sandra Jefferson
        3.      Robert Bazan
        4.      Hector Ruiz
        5.      Gilbert Gonzales
        6.      Chris Florance

7.    Hiram Perez
8.    Molly Sanchez
9.    Helen Gurley
10.   Jimmy Hartsfield
11.   Bradford "Brad" Condit
12.   Robert Nash
13.   Sergeant Longoria
14.   Saldivar Franco
15.   Pedro Cavazos
16.   Jesus Reyes
17.   Charlie Fulton
18.   Luis Everett
19.   Frank Quinones
20.   Antonio Gonzales, Jr.
21.   Robert Hornsby
22.   Alice Mann
23.   Pedro Vasquez
24.   Tomas Sanchez
25.   Rene Flores
26.   Allen Cumberland
27.   Edward Sanders
28.   Carol Maher
29.   Marie Naderer
30.   Mary Milks
31.   James Dreier
32.   Rev. Msgr. William T. Thompson
33.   Michael Hudspeth
34.   Sandra Eastwood
35.   Velma Garza

9.    Has anyone been employed as a policeman and/or employed with a police department?

10.   Has anyone been employed with the a security company?

10.   Does anyone know Gay Gilson, attorney for the Plaintiff?

11.   Does anyone know John Schulman, attorney for the Plaintiff?

12.   Does anyone know Jose Rangel, attorney for the Defendants?

13.   Does anyone know Cherry Wolf, attorney for the Defendants?

14.   Has anyone been involved in a lawsuit?

15. Has anyone either personally, or though a family member, friend or coworker been involved in a claim involving discrimination?

16. Has anyone either personally, or through a family member, friend or coworker been involved in a claim involving freedom of speech under the First Amendment to the Constitution of the United States?

17. Has anyone graduated from a university within the Texas A&M University system?

18. Has anyone graduated from Texas A&M University - Kingsville?

19. Has anyone graduated from Texas A&I University?

20. Has anyone had any business dealings with the Texas A&M University Police Department?

21. Has anyone given any gifts to any of the universities within the Texas A&M University system?

22. Does anyone believe that there are too many lawsuits at this time in our society?

23. Is there anyone who believes that jury verdicts are too high at this time in our society?

24. Would anyone hesitate to award a substantial verdict, if it was justified by the evidence, for "intangible" damages such as shame, shock and humiliation?

25. Would anyone hesitate to award a substantial verdict, if it was justified by the evidence, and supported by the judge's instructions to punish an individual who willfully violated another person's consitutional rights?

26. Is anyone a member of Citizens Against Lawsuit Abuse?

27. Is there anyone who could not award monetary damages to the Plaintiff if the Plaintiff proves his case?

28. Is there anyone would could not find for the Plaintiff under any circumstances?

29. Is there anyone or a family member of anyone who works in the insurance industry?

30. Is there anyone who doesn't believe they could be fair and unbiased as a juror in this case?

Respectfully submitted,

Law Office of Gay E. Gilson
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412
Telephone: (361) 814-0573
Facsimile: (361) 814-0674

By:_____
GAY E. GILSON
SBN 00784131/Fed.I.D. 16385
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded on February 23, 2001 by certified mail, return receipt requested to:

William T. Deane                                    Via CMRRR # Z 189 456 072
Jose Rangel
Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

_____
Gay E. Gilson