UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

MAR - 2 2001

MICHAEL N. MILBY CLERK

| | | |
|---|---|---|
| JOSEPH K. CONNOR | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | Civil Action No. C-00-69 |
| | § | |
| TEXAS A&M UNIVERSITY - KINGSVILLE; | § | **JURY TRIAL REQUESTED** |
| HUMBERTO GARCIA, Individually and in | § | |
| His Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in His Official Capacity | § | |
| | § | |
| Defendants. | § | |

## AMENDED JOINT PRETRIAL ORDER

1.    Appearance of Counsel.

Counsel for Plaintiff:

Gay E. Gilson
Law Office of Gay E. Gilson
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412
Telephone: (512) 814-0573
Facsimile: (512) 814-0674
SBN 00784131/Fed.I.D. 16385
ATTORNEY IN CHARGE

John E. Schulman
Law Office of John E. Schulman, P.C.
4555 W. Lover's Lane
Dallas, Texas 75209
(214) 361-2580
SBN 17833500

99.

Counsel for Defendants:

Jose M. Rangel
Dona G. Hamilton
Assistant Attorneys General
Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
SBN 16543550/Fed. I.D. No. 19859 (Rangel)
SBN 08825600/ Fed. I.D. No. 12012 (Hamilton)

2.      Statement of the Case.

Plaintiff, Joseph Connor was hired to work as a patrol officer with the Texas A&M University - Kingsville University Police Department on March 1, 1992 and continued to work there until he was terminated on June 18, 1999. Plaintiff is an Anglo, and Defendant, Humberto Garcia, a Hispanic male, was the Chief of the University Police Department from September 1, 1994 until his retirement on August 31, 1999. During Plaintiff's employment with the University Police Department, he received pay increases, was given generally positive evaluations and was honored as officer of the year.

In 1998 and 1999, Plaintiff applied for a promotion to the position of sergeant, but was not promoted. Salvador Franco, a Hispanic male, was promoted to sergeant in 1998 and Pedro Cavazos, a Hispanic male, was promoted to sergeant in 1999. As part of the promotion process, all candidates appeared before a promotion board and were asked a series of questions relating to the position of sergeant. In 1998, all three members of the promotion board were Hispanic and in 1999 two of the members of the promotion board were Hispanic and one was African American. In both instances, the Hispanic candidate scored higher than Plaintiff on the promotion board evaluations.

Plaintiff was terminated from the position of patrol officer in June 1999. On April 1, 1999

2

and April 21, 1999 was reprimanded for confiscation of items without a warrant and was placed on probation for six months. And then on May 16, 1999 he left the dispatcher's post to complete some paperwork in the back room, leaving the 911 office unattended. Plaintiff disputes the employer's description of all these events and asserts that he did nothing wrong and that other officers had engaged in similar conduct without being disciplined in any way.

Plaintiff asserts that he did not receive the promotions he sought because he is Anglo and that when he filed an EEOC complaint his employer retaliated against him by terminating him. In addition, Plaintiff argues that Defendants retaliated against him for speaking out on issues of public concern on the matter of a co-worker drinking on the job and his good-faith reporting of race/national origin discrimination in the operation of a public agency. Defendants disagree with these contentions. Defendants further disagree that Plaintiff has plead a claim regarding the reporting of discrimination under the First Amendment.

3.    Jurisidiction. This Court has jurisdiction over this action by reason of 28 U.S.C. 1331 and 1343, in that Plaintiff, pursuant to Title VII, seeks to redress racial discrimination and retaliation. This Court has jurisdiction over this action by reason of 42 U.S.C. §1983, in that Plaintiff, pursuant to 28 U.S.C. §1343(3), seek redress for deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States of America. Venue is proper pursuant to 28 U.S.C. §1391 because the acts complained of primarily occurred within the geographical boundaries of the United States District Court for the Southern District of Texas, Corpus Christi, Division.

4.    Motions. The parties are filing Motions in Limine.

5.    Contentions of the Parties.

3

Plaintiff contends the following:

Defendant, Humberto Garcia deprived Plaintiff of the fundamental rights and privileges as guaranteed by 42 U.S.C. §1983 and by the First Amendments to the United States Constitution.

Defendants violated Plaintiff's federally protected rights by treating him disparately in terms and conditions of employment when compared to non-Anglos. Further, Defendants engaged in extensive retaliation in response to Plaintiff's opposition to disparate and different treatment by Defendants. Both of these in violation of Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff continually spoke out about matters of public concern especially in regard to public safety issues in that a coworker, who was an officer of the University Police Department, was drinking on the job. Further, Plaintiff spoke out against and made a good faith report about race/national origin discrimination in the operation of a public agency which is a matter of public concern. The adverse employment actions taken against Plaintiff, including his termination, by Defendants were responses to Plaintiff's protected speech. By their adverse employment actions against Plaintiff, including Plaintiff's discharge, Defendants arbitrarily and capriciously infringed upon Plaintiff's right to freedom of speech authorized by the First Amendment to the United States Constitution.

The Defendants are liable to Joseph Connor for the following: Actual damages plus interest; Compensatory damages arising from the physical and emotional injury, pain, suffering, loss of reputation and humiliation plaintiff suffered as a result of defendant misconduct; Punitive damages as allowed by law; Exemplary damages as allowed by law; Injunctive relief of an affirmative nature, providing make whole economic relief and reinstatement; Prejudgment interest

4

as allowed by law; Post-judgment interest as allowed by law; Attorney's fees; Court costs; and such other legal or equitable relief ultimately justified by the proof of this case.

Defendants contend as follows:

Defendants contend that Plaintiff was not promoted to Sergeant in either 1998 or 1999, because he was not the most qualified of the applicants for the position. Defendants further contend that Plaintiff was terminated for numerous legitimate, non-discriminatory, non-retaliatory reasons, including but not limited to failing to carry out his official duties and responsibilities competently, as well as being insubordinate, conducting inappropriate searches, and leaving the dispatcher's post unattended for an extended period of time.

Defendants deny that the decisions to not promote Plaintiff to Sergeant in 1998 or 1999, and to subsequently terminate Plaintiff, were based on his race/national origin, or in retaliation for his having filed an EEOC Complaint or exercised his right to free speech. Moreover, Plaintiff cannot prove that he would have been promoted to Sergeant in 1998 or 1999, or would not have been terminated, but for his race/national origin or his having filed an EEOC Complaint or exercised his right to free speech.

6.   Admissions of Fact.

    1.   Plaintiff is an Anglo male.

    2.   Humberto Garcia is a Hispanic male.

    3.   Robert Bazan is a Hispanic male.

    4.   Humberto Garcia was Police Chief of Texas A&M University - Kingsville Police Department during Plaintiff's tenure.

    5.   Robert Bazan was a Sergeant with the Texas A&M University - Kingsville

5

Police Department during Plaintiff's tenure.

6.    Joseph Connor was employed with Texas A&M University - Kingsville Police Department as an officer for over six years at the time of his termination.

7.    Joseph Connor was honored as the Officer of the Year during his tenure with Texas A&M University - Kingsville.

8.    Joseph Connor verbally voiced his concerns about Sergeant Quinones drinking and driving to his residence in a university vehicle while drinking to Humberto Garcia.

9.    The University subsequently suspended and terminated Sgt. Quinones.

10.    The Texas A&M University System Regulations state in 33.99.01, Section 5: "Employment decisions will be based on job-related factors such as education...license/certification requirement....Race, sex, religious affiliation, or other protected status or classification shall not be the basis for a hiring decision.

7.    Contested Issues of Fact.

1.    Whether Defendant Humberto Garcia, deprived Plaintiff of the fundamental rights and privileges as guaranteed by 42 U.S.C. §1983 and by the First Amendment to the United States Constitution.

2.    Whether Defendants violated Plaintiff's federally protected rights by denying him promotions to the position of Sergeant in 1998 and 1999. Further, whether Defendants engaged in extensive retaliation in response to Plaintiff's opposition to his not being promoted in 1998 or 1999. Both of these in violation of Title VII of the Civil Rights Act of 1964, as amended.

3    Whether Plaintiff spoke out about a matter of public concern regarding a co-worker, who was an officer of the University Police Department, drinking on the job and and his good-faith

6

reporting of race/national origin discrimination in the operation of a public agency and whether the Plaintiff's termination was in response to Plaintiff's protected speech. Defendants disagree that Plaintiffs claim of retaliation for reporting of discrimination has been properly plead.

4.      Whether or not Plaintiff can prove that he would have been promoted in 1998 or 1999, and would not have been terminated, but for his race/national origin, his having exercised his right of free speech and/or his having filed a complaint with the EEOC.

5.      Whether Defendant Garcia is entitled to qualified immunity.

6.      Whether the Defendants are liable to Joseph Connor for the following: Actual damages plus interest; Compensatory damages arising from the physical and emotional injury, pain, suffering, loss of reputation and humiliation plaintiff suffered as a result of defendant misconduct; Punitive damages as allowed by law; Exemplary damages as allowed by law; Injunctive relief of an affirmative nature, providing make whole economic relief and reinstatement; Prejudgment interest as allowed by law; Post-judgment interest as allowed by law; Attorney's fees; Court costs; and such other legal or equitable relief ultimately justified by the proof of this case.

7.      Whether the Plaintiff mitigated his damages.

8.      Whether Humberto Garcia never took a Hispanic officers' traffic ticket book away.

9.      Whether Humberto Garcia never took a Black officer's traffic ticket book away.

10.      Whether in February 1997, it was declared that the policy manual for the university police department was not valid by Humberto Garcia.

11.      Whether the University Police Department did not have a policy regarding discrimination or equal employment opportunities during Humberto Garcia's tenure.

7

12.     Whether Humberto Garcia was a supervisor with the authority to hire, fire, promote and demote.

13.     Whether Humberto Garcia did not read the Texas A&M University's policy regarding Equal Employment Opportunities.

14.     Whether Humberto Garcia testified that he never disciplined a Hispanic employee or Black employee for leaving work early or coming in late.

15.     Whether Steven Crandall, the Vice President for Finance and Administration, sent a memorandum to Joseph Connor on 11/02/98, in response to Connor's request that he look into disparate treatment he was experiencing regarding leave.

16.     Whether Chris Florence, an Anglo officer, notified Sargent Perez that there were problems with Joseph Connor's officer radio.

17.     Whether Humberto Garcia called Joseph Connor a bastard in Spanish a few weeks before he was terminated.

18.     Whether Joseph Connor requested that he train officers in first aid and CPR.

19.     Whether prior to 1998, the University Police Department did not have a promotion board, Humberto Garcia made the sole decisions regarding promotion.

20.     Whether after 1998, a promotion board, appointed by Humberto Garcia, made decisions regarding promotions.

21.     Whether the promotion boards for 1998 and 1999 were made up of all non-Anglos.

22.     Whether any Anglo has held any supervisory position with the TAMUK Police Department for at least the last ten years.

23.     Whether Humberto Garcia possessed a bachelor's degree.

8

24.     Whether Humberto Garcia is unaware of the requirement that the Chief of Police at Texas A&M University - Kingsville hold a bachelor's degree.

25.     Whether a bachelor's degree is a "necessary qualification" for the position of Director/Chief of Police.

26.     Whether Humberto Garcia signed the job description for Director/Chief of Police in 1997, along with Steven Crandall, VPFA, despite Defendant Garcia not possessing a "necessary" qualification for the position.

27.     Whether Humberto Garcia refused to consider education as a qualification in hiring and promotions.

28.     Whether Humberto Garcia didn't receive training as far as discrimination in the workplace while he was employed with the A&M system.

29.     Whether in 1998, Sargent Franco, a Hispanic male, was promoted.

30.     Whether Sargent Franco was made the fire arms safety officer even though he had never been to school for such training.

31.     Whether Joseph Connor was told by Humberto Garcia that he would be sent to fire arms instructor school.

32.     Whether Joseph Connor was not sent to fire arms instructor school by the Texas A&M University Police Department.

33.     Whether the Promotion Board had no policies and procedures.

34.     Whether in March 1999, a memo was circulated that all supervisors would be present at the promotion board.  Whether the promotion board met without all supervisors present.

35.     Whether, at all times during Joseph Connor's employment with Defendants, he

9

possessed the required qualifications for promotion as set out by the Texas A&M University System.

36.     Whether, on several occasions throughout Plaintiff's employment with Defendants, Humberto Garcia called Plaintiff a liar.

37.     Whether Joseph Connor's prior supervisory experience was not considered for his potential promotions.

38.     Whether supervisors frequently spoke Spanish.

39.     Whether when the Sergeants were together it was easier for them to communicate in Spanish.

40.     Whether when the Sergeants would speak in Spanish, that would include talking about the job.

41.     Whether at the time of Joseph Connor's termination, he was the only Anglo employee of the University Police Department.

42.     Whether, at the time of Joseph Connor's termination there were about 15 patrolmen and five or six other employees such as dispatchers and office help.

43.     Whether Sargent Bazan left the University Police Department building, when he was the only person on duty, and was not terminated.

44.     Whether Humberto Garcia doesn't know if Joseph Connor received a copy of any write-ups he received in April, May or June 1999.

45.     Whether Humberto Garcia cannot cite laws, regulations or other standards which Joseph Connor violated which led to his termination.

46.     Whether Defendants are not sure who replaced Plaintiff.

47.     Whether On April 1, 1999, Sargent Hiram Perez told officer #110 to ask Mr. Knapp

10

if it was okay with him (Knapp) to bring in the stereo to check against the cases U.P.D. had.  The items were removed after permission was given by Mr. Knapp and brought to U.P.D......"

48.     Whether pPrior to Joseph Connor being written up for confiscating the stereo on April 1, 1999, Humberto Garcia spoke to Sergeant Hiram Perez about the incident.  Whether, at the time, Sergeant Perez was Joseph Connor's supervisor.

49.     Whether Lieutenant Jefferson, a black female, used the copy machine for personal use and was not disciplined.

50.     Whether Sergeant Longoria and Defendant Sergeant Robert Bazan took University property for their personal use and were not disciplined.  Whether Humberto Garcia was aware of these activities.

51.     Whether the University Police Department does not have procedures for tagging and storing evidence.

52.     Whether Humberto Garcia stated that Joseph Connor would never make sergeant as long as he was there.

53.     Whether Defendant, Humberto Garcia deprived Plaintiff of the fundamental rights and privileges as guaranteed by 42 U.S.C. §1983 and by the First Amendments to the United States Constitution.

54.     Whether Defendants violated Plaintiff's federally protected rights by treating him disparately in terms and conditions of employment when compared to non-Anglos.  Further, whether Defendants engaged in extensive retaliation in response to Plaintiff's opposition to disparate and different treatment by Defendants.  Both of these in violation of Title VII of the Civil Rights Act of 1964, as amended. Defendants disagree that Plaintiff properly preserved an issue of disparate

11

treatment or retaliation and have not properly plead same.

55. Whether Plaintiff continually spoke out about matters of public concern especially in regard to public safety issues in that a coworker, who was a officer of the University Police Department, was drinking on the job and his good-faith reporting of race/national origin discrimination in the operation of a public agency and whether the adverse employment actions taken against Plaintiff, including his termination, by Defendants were responses to Plaintiff's protected speech. Defendants disagree that Plaintiffs claim of retaliation for reporting of discrimination has been properly plead.

56. Whether the Defendants are liable to Joseph Connor for the following: Actual damages plus interest; Compensatory damages arising from the physical and emotional injury, pain, suffering, loss of reputation and humiliation plaintiff suffered as a result of defendant misconduct; Punitive damages as allowed by law; Exemplary damages as allowed by law; Injunctive relief of an affirmative nature, providing make whole economic relief and reinstatement; Prejudgment interest as allowed by law; Post-judgment interest as allowed by law; Attorney's fees; Court costs; and such other legal or equitable relief ultimately justified by the proof of this case.

57. Defendants do not agree that all of the above listed contested issues of fact are relevant to the claims in this case.

8. Agreed Propositions of Law.

    A. Whether Plaintiff's evidentiary proof will support a judgment for First Amendment retaliation, Title VII discrimination and Title VII retaliation.

    B. Whether the applicable Defendant can prove that the same adverse action would have been taken against Plaintiff in the absence of protected First Amendment free speech

12

activity and/or Plaintiff's filing an EEOC Complaint.

9.      Contested Propositions of Law.

A.      Whether Plaintiff's claim of retaliation for reporting of discrimination has been properly plead as a First Amendment retaliation claim.

B.      Whether Plaintiff has properly preserved an issue of disparate treatment or retaliation under Title VII and has properly plead same.

C.      Whether Defendant Garcia is entitled to qualified immunity.

10.     Exhibits.

A list of exhibits for each party have been filed with the Court.

11.     Witnesses.

A list of witnesses for each party have been filed with the Court.

12.     Settlement.  All settlement efforts have been exhausted, the case cannot be settled, and that it will have to be tried.

13.     Trial.

A.      The probably length of trial is 4 to 5 days - depending on the length of the work day.

B.      At this time, no logistical problems are anticipated.

14.     Attachments.

A.      For a jury trial:

(1)     Proposed questions for the voir dire examination have been filed with the Court.

(2)     Proposed charge, including instructions, definitions and special interrogatories, with authority have been filed with the Court.

13

Date: _____

_____
UNITED STATES DISTRICT JUDGE

Approved:

Date: 03/02/01

_____
Attorney-in-Charge, Plaintiff

Date: 3/2/01

_____
Attorney-in-Charge, Defendant

14