

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR,<br>*Plaintiff,* | § | |
| | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. C-00-069 |
| | § | |
| TEXAS A&M UNIVERSITY-KINGSVILLE, | § | |
| HUMBERTO GARCIA, Individually and in | § | |
| his Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in his Official Capacity, | § | |
| *Defendants.* | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFF CONNOR'S RULE 59(a)-(e) MOTION FOR NEW TRIAL ON DAMAGES AND MOTION TO ALTER AND/OR AMEND JUDGMENT TO INCLUDE EQUITABLE RELIEF

Plaintiff Joseph Connor, through his Rule 59(a)-(e) Motion, asks the Court first, to amend the Final Judgment in this case to allow for equitable and injunctive relief and, second, to grant a new trial on the issue of damages. The relief Plaintiff seeks is neither authorized nor justified.

### I. PLAINTIFF'S MOTION FOR NEW TRIAL

In essence, what Plaintiff seeks through his Motion for New Trial is a new trial on the issue of what, if any, back pay and mental anguish damages Plaintiff should be awarded by a new jury. Plaintiff argues that the jury's answer to Question No. 4 of the Verdict Form is not consistent with the evidence. Defendants disagree and contend that the jury's verdict with regard to damages should not be disturbed.

Plaintiff's Motion for New Trial should be denied on any of the following grounds.

**a. The Jury Is the Judge of the Facts/There is "No Clear Error of Law."**

The ostensible favor of the courts toward the jury's verdict and the reluctance of courts to tamper with the jury verdict is essential for the purpose of preserving the integrity of the jury system



and abiding by the Seventh Amendment constitutional right to a jury trial, a right the Plaintiff himself exercised here by requesting a jury trial and by further agreeing that a back pay award and a mental anguish award be determined by the jury and not this Court. Because of the deference due the jury's factual findings, all reasonable efforts should be made to uphold its verdict. In reviewing the propriety of a jury verdict, it is the Court's obligation to uphold the jury's award of no damages if there exists a reasonable basis to do so. The sound discretion of the jury, under all the circumstances, is the only practicable measure. *Ward v. Buehler,* 472 F2d 1170, 1171 (5th Cir. 1973). See also *Reicheneder v. Skaggs Drug Center*, 421 F2d 307, 313 (5th Cir. 1970).[1] A jury's findings will not be lightly regarded and such findings must be upheld if the reviewing Court, considering all the evidence and all its reasonable inferences in the light most favorable to the party

---

[1]     The general standard by which the Fifth Circuit reviews trial court orders granting new trials is abuse of discretion. *Spurlin v. General Motors Corp.*, 528 F.2d 612 (5th Cir. 1976). Such a standard recognizes the deference that is due the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record; deference to the jury's determination of weight of the evidence and quantum of damages; and deference to the constitutional allocation to juries of questions of fact. This deference is especially appropriate where a new trial is denied and the jury's determinations are left undisturbed. *Valley View Cattle Co. v. Iowa Beef Processors,* 548 F.2d 1219 (5th Cir. 1977). Also *Brady v. Fort Bend Co.* 145 F.3d 691 (5th Cir. 1998). The cases in our circuit have noted that where the trial judge denies the motion and leaves undisturbed the jury's determination, all factors press in the direction of leaving the trial judge's ruling undisturbed. The cases in our circuit apply a somewhat broader review, however, to orders that grant a new trial, mandating the greatest degree of scrutiny. See, *e.g., Love v. Sessions,* 568 F.2d 357 (5th Cir. 1978). This is done to assure that the judge does not simply substitute his judgment for that of the jury, thus depriving the litigants of their right to trial by jury. *Id.* at 361. In a further effort to avoid such substitutions, the Circuit Court has noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great, not merely the greater, weight of the evidence. *Spurlin v. General Motors Corp.,* at 620. The cases reason that where the judge has granted a new trial, the factors oppose each other. Deference to the trial judge is subjected to opposing tensions of deference to the jury as the body to whom fact finding is constitutionally allocated and deference to the decision which the jury has reached pursuant to that authority. *Id.*

2

in whose favor the findings at issue were made, finds there is sufficient evidence such that reasonable persons might reach different conclusions. *Shipp v. General Motors Corporation*, 750 F.2d 421 (5th Cir. 1985). Stated another way, all the evidence must be viewed and all reasonable inferences drawn in the light most favorable to the jury's verdict, and the verdict must be affirmed unless the evidence points so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary conclusion; if reasonable persons could differ in their interpretation of the evidence, then the motion for new trial should be denied. Thomas v. TDCJ, 220 F.3d 389, 392 (5th Cir. 2000)[2]

### b. The Court's Instructions to the Jury and the Verdict Form Authorized the Jury to Award Zero Damages

The Court's Instructions to the Jury and the Verdict Form permitted the jury to award zero back pay damages as well as zero mental anguish damages. There is nothing in the Court's Instructions and/or the Verdict Form that mandates the jury to award back pay and/or mental anguish damages. Rather, the jury was instructed at page 7 of the Court's Instructions as follows: [the Court is] "instructing you on damages only so that you will have guidance **in the event you should decide** that either or both the defendants are liable and **that the Plaintiff is entitled to recover money** from **either or both of the defendants"; you may award compensatory damages"**; and finally, **"[i]f you decide to award compensatory damages."** The jury could reasonably, and indeed easily,

---

[2]     Plaintiff has cited no case or statute, and Defendants' counsel have found none, that mandates the award of back pay or mental anguish damages upon a finding of retaliatory discharge. The only case counsel was able to find that addressed this particular issue, was *Nissin v. McNeil Consumer Products Company,* 957 F.Supp. 600 (E.D. Pa. 1997). Defendants invite the Court to read that decision.

3

conclude from these instructions alone that an award of back pay and/or mental anguish damages was not compulsory even upon a finding of liability.

Further, the express language of Question No. 4 of the Verdict Form confirms that a result of finding retaliation without awarding back pay and/or mental anguish damages was authorized: "What sum of money, **if any,** . . ."  Neither the plaintiff, nor the defendants, objected, nor took exception, to the above-referenced instructions to the jury, or to the verdict form.

### c. Reasonable Persons Could have Concluded Plaintiff<br>was not Entitled to Damages.

Defendants were entitled to and received the appropriate affirmative defenses in the Court's charge for the Title VII retaliation claim and the First Amendment claim.  Defendants believe that it was the application of these instructions in the charge that lead to the verdict of zero damages.

On page 4 of the Court's Instructions the jury is instructed as to the elements that it must find to establish a retaliation claim under Title VII.[3]  The jury is then told that "if you find that the plaintiff has established each element of his claim by a preponderance of the evidence, you must find defendant TAMUK is liable to the plaintiff."  It would be reasonable for the jury to have answered Question No. 1 "yes" because they believed that the plaintiff established each element of the claim. However, the jury is further told at page 4 in the Instructions that "Whether or not there were other reasons for TAMUK's actions, Connor will prevail only by proving that "but for" his opposition to

_____

[3]      "In order to prove a retaliation claim, plaintiff must establish by a preponderance of the evidence that:

1. He actively opposed or complained about a discriminatory employment practice;
2. Plaintiff's discharge followed; and
3. Plaintiff's opposition to the discriminatory employment practice caused his discharge."

4

an unlawful employment practice he would not have been discharged." The jury is not told that this is an element of the claim, and in fact, the Court's Instructions indicate that it is not. See Fn. 3. Although the jury is given no particular guidance as to how to apply this statement and is given no definition of what it means to "prevail," it is entirely reasonable that the jury thought "prevail" would mean the plaintiff is entitled to damages. It is also entirely reasonable that the jury believed Connor would have been discharged even if he had not opposed an unlawful employment practice. Therefore the jury could have reasonably thought to give meaning to the "but for" instruction meant the plaintiff was not entitled to any damages. Clearly the jury did not believe plaintiff should prevail and therefore awarded no damages.

There is a similar instruction on pages 5 and 6 of the Court's instructions for the claims of First Amendment retaliation. The jury is given the elements of the claim and told that the plaintiff must prove each element by a preponderance of the evidence.[4] However the jury is further told that "If you find that the plaintiff has established each element of his claim, you must then decide whether defendant Garcia has shown by a preponderance of the evidence that he would have dismissed the plaintiff for other reasons even if plaintiff had not exercised his protected speech

---

[4]     ". . ., the plaintiff must prove by a preponderance of the evidence each of the following:
1.  That the action of defendant Garcia was "under color" of the authority of the State of Texas;
2.  That the plaintiff's speech activities were Constitutionally "protected" under the First Amendment;
3.  That the plaintiff's exercise of protected First Amendment rights was a substantial or motivating factor in defendant Garcia's decision to discharge the plaintiff from employment;
4.  That defendant Garcia's acts were the proximate or legal cause of the plaintiff's damages."

activity. If you find that defendant Garcia would have dismissed the plaintiff for reasons apart from the speech activity, then your verdict should be for defendant Garcia." The jury is given no specific direction on where or how to apply this affirmative defense and it is not told what "your verdict should be for defendant Garcia" means. Like the Title VII claim, the jury could have reasonably thought they should answer Question No. 3 "yes" if they believed the plaintiff established the elements of the claim (see FN. 4) and that a "verdict" for defendant Garcia meant no damages.

Here too, the parties did not object to the instruction and therefore cannot complain now.[5] We are bound to accept a reasonable interpretation that gives meaning to the Court's charge and the jury's verdict.

There is sufficient evidence in the record from which the jury could reasonably conclude that Plaintiff should not be awarded damages, including back pay. For example, reasonable persons (i.e., the jury) could have concluded that Plaintiff's termination was imminent, or that his employment at TAMUK should have been terminated long before it was. These conclusions could easily have been based on his past performance and/or all, or any combination, of the following actions or omissions on his part, almost all of which occurred long before he filed his Corpus Christi Human Relations Commission/EEOC Complaint (See Defendants' Ex. 48) and/or the date he expressed his unsubstantiated opinion to Lt. Sandra Jefferson that he was passed over for promotion to Sergeant

---

[5] Defendants did object to the addition of Question No. 3 as not supported by the pleadings in this case. This issue is addressed in Section III below.

due to his race and how he intended to file a complaint with the Corpus Christi Human Relations

Commission and/or the EEOC:[6]

**1) Plaintiff's performance evaluations.**

All of the Plaintiff's performance evaluations occurred long before Plaintiff informed Lt.

Jefferson of his intent to file a complaint of discrimination on the basis of race, and May 10, 1999,

the date he filed such a complaint.

> **Plaintiff's 1995-1996 Performance Evaluation,** which he refused to sign, was way below average. See Plaintiff's Ex. 120, pp.109-110.

> **Plaintiffs' 1996-1997 Performance Evaluation** was likewise below average. See Plaintiff's Ex. 120, pp. 103-104.

> **Plaintiff's 1997-1998 Performance Evaluation** was barely average, if not slightly below average. (See Plaintiff's Ex. 120, pp. 99-100.)

> **Plaintiff's 1998-1999 Performance Evaluation** was barely average. (See Plaintiff's Ex. #120, pp. 97-98).

**2) Almost all of Plaintiff's numerous unprofessional acts/omissions occurred before any expressions or filing of any complaints of alleged discrimination.**

> **5-24-92** - Becky Pearson's Sexual Harassment Complaint against Plaintiff (as well as Molly Sanchez' work related complaints against Plaintiff). See Officer's Report prepared by Sgt. Bazan - Defendants' Ex. 23.

> **9-24/25-92** - Becky Pearson's Second Sexual Harassment Complaint against Plaintiff. See Officer's report prepared by Sgt. Mata - Defendants' Ex. 24.

> **10-1-92** - "Official Reprimand" on Defendants' alleged improprieties, and six month probationary period imposed. Letter signed by the Chief of the University Police

---

[6]It is Defendants' counsel's recollection that Lt. Sandra Jefferson testified that Plaintiff informed her for the first time of his intent to file a discrimination claim shortly after he was passed over for promotion to Sergeant on March 31, 1999. See also Plaintiff's Ex. 31. Plaintiff filed his "Complaint" on May 10, 1999. See Defendants' Ex. 48.

Department at the time, Antonio Gonzalez, Jr., now Sheriff of Kleberg County). See Defendants' Ex. 25.

**12-8-95** - Memo from Sandra K. Brown, Comptroller, to Chief Bert Garcia complaining of Plaintiff's having left Belle Kieschnick from the Comptroller's Office alone in his patrol car with $6,200.00 in cash. According to Ms. Brown, no other officer, in her memory, had ever done what Plaintiff did. See Defendants' Ex. 26.

**8-20-96** - R. G. Utley's "Officer's Report" complaining of Plaintiff's rifling through Sgt. Quinones' mailbox. See Defendants' Ex. 27.

**7-4-98** - Valerie Robles' (TAMUK student) photographs of Plaintiff asleep in his patrol car on campus. See Plaintiff's Ex. 22 and Defendants' Ex. 22.

**9-5/7-98** - Janet Briones' (Anglo) Sexual Harassment complaint against Plaintiff (the third such complaint made against Plaintiff since he was hired at TAMUK).[7] See Defendants' Ex. 28. TAMUK's Human Resources Director Jim Hartsfield testified that Plaintiff should have been terminated at this point in time. Hartsfield testified that Plaintiff's continual sexual harassment of TAMUK employees opened the University up to the possibility of a sexual harassment lawsuit being filed against it. Indeed, Mr. Hartsfield testified that the University would have been justified, and he would have advised/recommended to the proper officials at the time, that Plaintiff be terminated back in 1992, while Plaintiff was still on probation (before his probation was extended another six months by UPD Chief Antonio Gonzalez, Jr.) based on the two sexual harassment complaints made against him at the time.

**9-29-98** - Sgt. Franco's report of insubordination on the part of Plaintiff. This involved Connor's flat refusal to correct two separate reports, one involving criminal mischief and the other involving theft, that Sgt. Franco instructed him to correct. See Defendants' Ex. 31.

**4-1-99** - Plaintiff confiscated certain items, particularly a stereo, without a warrant and stated to Chief Garcia that the seized property was tagged and marked, when in fact, it was not. Plaintiff was "Officially Reprimanded" by Chief Garcia and told that any further infractions will result in further disciplinary action up to and including termination.[8] See Defendants' Ex. 36.

---

[7]     Ten or so days before Ms. Briones complained of Plaintiff's sexual harassment, Chief Garcia announced that effective 9/1/98 Salvador Franco would be promoted to the position of Sergeant. See Plaintiff's Ex. 25.

[8]     On 3-31-99 Chief Garcia announced that Cavazos was promoted to Sergeant effective 4/1/99. See Plaintiff's Ex. 31.

**4-26-99** - Plaintiff was reprimanded by Sgt. Franco for insubordination for refusing to submit a report, although instructed to do so on several occasions by Sgt. Franco, regarding a reported theft at Turner Hall. See Defendants' Ex. 38. Incredibly the Turner Hall dorm advisors and manager submitted reports of the incident, but Plaintiff, a UPD police officer responsible for investigating the alleged theft, refused to. See Defendants' Exs. 34 and 39. Sgt. Franco testified that very shortly after Franco was selected for the position of Sergeant, Plaintiff confronted him and told Franco that Plaintiff would make a much better Sergeant than he would.

**5-5-99** - Dispatcher Roy Pena reported that Plaintiff "whited out" a case number of a case that had been assigned to him. See Defendants' Ex. 40. Sgt. Bazan testified that it is a violation of UPD/TAMUK policy and/or procedure for Plaintiff to have done this, and that the only appropriate person to do so would have been Plaintiff's supervisor or the Chief of UPD. A UPD police officer cannnot simply "erase" the assignment of a case and act like the assignment was never made.

**5-5-99** - Plaintiff "Officially Reprimanded" by Chief Garcia for insubordination for a second time (See Defendants' Ex. 36) and placed on "Probation" for a period of six months, and informed by Chief Garcia for a second time, that "any infraction thereof during this period will result in termination." See Defendants' Ex. 41. See also Defendants' Ex. 38.

**5-10-99** - Plaintiff files his EEOC Complaint. See Defendants' Ex. 48.

**5-16-99** - Plaintiff failed to man the dispatcher's post (i.e., the "911 System") as required.

**6-4-99** - Plaintiff terminated, effective 6-18-99.

Based on the above evidence it would have been entirely reasonable for the jury to conclude that Plaintiff's termination was proper and that Plaintiff would have been terminated regardless of his activity regarding his EEOC charge and/or free speech activities. Moreover, the evidence established that absolutely no other officer with the UPD had been guilty of any of the above-referenced acts or omissions, or, with the exception of Sgt. Quinones, been placed on six months' probation once, much less twice, and informed even once, much less three separate times, that one more infraction could lead to termination. See Defendants' Exs. 25 (10-1-92), 36 (4-1-99) and 41 (5-5-99). Again, jury findings will not be lightly regarded and such findings must be upheld if the

9

reviewing Court, considering all the evidence and all reasonable inferences in <u>the light most favorable to the party in whose favor the findings at issue were made</u>, finds there is sufficient evidence such that reasonable persons might reach different conclusions. See *Shipp* at page 421.

### d. Reasonable Persons Could have Concluded that Plaintiff Could have Avoided Any Damages.

Alternatively, the jury could have concluded that Plaintiff did not do enough to find other employment.[9]   For example, Exhibit 70 is an announcement that the Sinton Police Department would be administering the written entry examination for patrol officers on August 4, 1999, and Exhibit 104 is the Sinton Police Department's September 22, 1999, announcement that Plaintiff did not make the grade and the position was filled. Exhibit 78 is an August 11, 1999 "notification" from Texas A&M University - Corpus Christi that Plaintiff was not selected for the police officer position he had applied for. Exhibit 80 is a "notification" from the City of Corpus Christi dated October 21, 1999, that Plaintiff was being invited to take a "re-test" of the Physical Agility Test for an available peace officer position. The jury could have concluded that Plaintiff did not take the test, or, alternatively, that he did not pass the test, if indeed he ever took it a first time. There is no evidence that Plaintiff ever took the "re-test" of the Physical Agility Test scheduled for November 2, 1999. Exhibit 71 is a "notification" dated February 8, 2000, that the Nueces County Constable Pct. 6 Office was in receipt of Plaintiff's application for the position of Deputy Constable. Exhibit 79 is the "notification" to Plaintiff from the Nueces County Constable Pct. 6 Office that he was not selected.

---

[9]      When the parties agreed to take out the mitigation instruction the jury was left without any guidance regarding the evidence presented about Plaintiff's efforts to find other employment.

Based on this evidence, the jury could have easily concluded that Plaintiff failed to do what he needed to do to find other employment and consequently was not entitled to back pay damages.

### e. Defendants' Contingent Request to Interview the Individual Jurors

1.     If the Court should be inclined to grant Plaintiff's Motion for New Trial, then Defendants respectfully request that their counsel be allowed to interview the individual jurors and question them not only as to the basis for their findings with regard to damages, but their findings with regard to liability, to determine whether the jury's verdict was a compromised verdict. If it was, than the Court should order a new trial on all issues. *Hatfield v. Seaboard Air LineRailroad,* 396 F.2d 721,724 (5th Cir. 1968); *Williams v. Slade,* 431 F.2d 605, 608-609 (5th Cir. 1970); *National Railroad Passenger Corp. v. Koch Industries, Inc.,* 701 F.2d 108, 110 (10th Cir. 1983).

2.     Alternatively, Defendants contend that should the Court choose to grant Plaintiff's Motion for New Trial, the Court should grant a new trial on the Title VII retaliation claim only, and as to both liability and the proper amount of damages, if any. However, see Section III below. Question No. 2 had a "no" answer to liability and Plaintiff has not argued there is any problem with this finding. A new trial addressing the claim found in Question No. 3 would be inappropriate for the reasons Defendants articulated during the pretrial hearing and the Rule 50 Motion since the claim was not properly plead. See further discussion in section III below. If the Court disagrees, and holds that the claim found in Question No. 3 was properly plead, then, in that event, Defendant Garcia contends that the Court should grant a new trial on that issue (including liability), as well. *Hatfield v. Seaboard Air LineRailroad,* 396 F.2d 721,724 (5th Cir. 1968) ("Substantial justice and each party's right to a jury trial require a new trial of all the issue."); *Williams v. Slade,* 431 F.2d 605, 608-609

11

(5th Cir. 1970) ("it appears from the record as a whole that the interests of justice will be best served by a new trial on all issues.").

## II.  PLAINTIFF'S MOTION TO ALTER AND/OR AMEND JUDGMENT

Plaintiff, seeks through his Motion to Alter and/or Amend, four types of equitable relief: A) that he be reinstated to his former position; B) that Defendants be ordered not to retaliate against Plaintiff Connor; C) that Defendant TAMUK be ordered to expunge Plaintiff's personnel files of all termination related documents; and D) that Defendant TAMUK be ordered to resubmit the Form F5 to TCLEOSE to represent that Plaintiff was reinstated and that his termination records were expunged by order of this Court.  Defendants contend that Plaintiff's Motion to Alter and/or Amend should be denied in its entirety.

### A.     Plaintiff's Request That He Be Reinstated to His Old Position Should be Denied.

Although Plaintiff cites *Mt. Healthy v. Doyle*, 97 S.Ct 568 (1977) and *West v. Gibson*, 119 S.Ct. 1906 (1998) as support that reinstatement may be an appropriate remedy for violations of constitutional rights and  Title VII, neither of these cases mandates such relief in the instant case, much less in all cases involving the violation of constitutional rights and/or Title VII. The granting of such relief (i.e., reinstatement) is discretionary and should only be granted when the facts of the particular case clearly call for such relief.  The right of reinstatement is not automatic and absolute. *P.A.C.E. v. El Paso County Comm. College Dist.*, 730 F.2d 258, 268 (5th Cir. 1984).  Moreover as recognized by the Fifth Circuit Court in *P.A.C.E.,* "[c]ourts generally order reinstatement because they . . . assume that . . . the defendant would have continued to employ the Plaintiff indefinitely if the Plaintiff had not engaged in the . . . constitutionally protected conduct that led to his dismissal."

12

*Id.* at 268.[10]  Based on the jury's failure to award any damages, and the accompanying obvious

reasons for such a finding, as well as the substantial evidence of the Plaintiff's less than stellar

performance as a police officer at TAMUK, and the numerous incidents of unprofessional behavior

while employed by TAMUK, reinstatement would be inappropriate in the instant case.

Defendants would respectfully request that should the Court be inclined to order

reinstatement, that an evidentiary hearing first be held where Defendant TAMUK can offer even

more evidence, including testimony, as to why reinstatement would be inappropriate in the instant

case. *Id.*

**B.**   **Ordering Defendants Not to Retaliate is neither Necessary nor Appropriate.**

The only individual that the jury could have concluded retaliated against Plaintiff for

exercising his right of free speech/filing an EEOC Complaint, was Defendant Garcia; and Defendant

Garcia is no longer at the University.  Because Defendant Garcia is no longer an employee of

TAMUK or a "state official," it would be improper to issue an injunction against him.

**C.**   **Defendant TAMUK Should not be Ordered to Expunge Plaintiff's Personnel Files of Any Documents.**

**D.**   **Defendant TAMUK Should Not be Ordered to Resubmit the Form F5 to TCLEOSE to Represent Plaintiff's Reinstatement and that Plaintiff's Termination Records Were Expunged.**

Defendants adopt and incorporate herein the arguments and authorities included in response

to Plaintiff's request for an order from this Court for reinstatement found in subsection A above.

Plaintiff's request for an order expunging Plaintiff's personnel files of all termination related

---

[10]Plaintiff did not testify that he was unhappy in his new job, nor did he express at trial a desire to return to TAMUK.

documents as well as his request for an order requiring Defendants to resubmit the Form F5 to TCLEOSE should be denied for those same reasons. The jury's decision to award no damages, as well as the substantial evidence of the Plaintiff's poor performance as a police officer at TAMUK make further injunctive relief unwarranted.

### III. THE COURT SHOULD DENY PLAINTIFF'S REQUESTED RELIEF BECAUSE ITS DENIAL OF DEFENDANTS' RULE 50 MOTION WAS INCORRECT.

Plaintiff asked for and received permission to add an additional cause of action for First Amendment retaliation at the pretrial conference. Defendants' objected to this addition in the pretrial conference and in the urging of their Rule 50 motion. The basis for Defendants' objection was that the additional cause of action was not raised in Plaintiff's live pleading, the Original Complaint, nor identified upon inquiry in response to written discovery or in the deposition testimony of the Plaintiff. Federal Rule of Civil Procedure 8(a) requires that the claim for relief set out a short and plain statement of the claim showing that the pleader is entitled to relief. Plaintiff's statement on page 11, paragraph 59 of his Original Complaint is insufficient to support a claim for violation of First Amendment rights. Specifically, Plaintiff states only "Plaintiff continually spoke out about matters of public concern especially in regard to public safety and protocol and procedures of the university police department." By this Plaintiff has asserted that he raised a claim for violation of the First Amendment for speaking out about discrimination by his filing of an EEOC charge. Defendants contend this statement is not enough especially in light of Plaintiff's responses to discovery:

> Interrogatory No. 7 to Plaintiff: With respect to your alleged violation of First Amendment Rights described in Paragraphs 58-62 of your Complaint, please state

14

all facts that demonstrate specific actions by Defendant Garcia, which show such violations.

Answer: I spoke out about matters of public concern such as Sergeant Quinones' drinking on the job and in an official patrol unit; reporting problems with University Police Department radios (which were not working); Campus safety issues; the University Police Department's lack of procedures; and a request made of me to change an official report and in denial of my request to train officers in CPR. The actions taken against [sic] as specified in the Complaint in my oral deposition [sic] are a result of being retaliated against for my Freedom of Speech. (Filed as Exhibit 1 at pretrial hearing.)

Defendants further offered Plaintiff's deposition testimony from pages 143-146 which makes absolutely no mention of speech regarding discrimination or about the filing of his EEOC charge. (Filed as Exhibit 2 at pretrial hearing.) The 5th Circuit stated in *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387-88 (5th Cir. 2001) that "more is required from the complaint than 'legal conclusions masquerading as factual conclusions' citing *Fernandez-Montes*, 987 F2d at 284. Here, the complaint did not contain a short and plain statement of the claim, only legal conclusions of such generality as to fail to give fair notice." See Wright & Miller, Federal Practice and Procedure: Civil 2d §1357 at 319-20 "...the court will not accept conclusory allegations concerning the legal effect of the events plaintiff has set out if these allegations do not reasonably follow from his description of what happened..." See also, *Thomas v. TDCJ*, 220 F.3d 389 (5th Cir. 2000). Here the Plaintiff does not meet the standard of Rule 8(a) as defined by the 5th Circuit and this claim should not have been allowed as part of the Court's Instructions or Verdict.

Defendants also presented a Rule 50 motion on Plaintiff's Title VII retaliation claim. The basis for the motion was that Plaintiff failed to show that his opposition to the discriminatory practice caused his discharge and further, that Plaintiff failed to show that "but for" his opposition to the discriminatory practice he would not have been terminated. Defendants relied on the trial

15

evidence set out in Section II(c) above and note specifically that the great majority of the activities which were the basis for Plaintiff's termination occurred **before** he filed his EEOC charge and accordingly could not be due to some retaliatory motive and certainly supports the proposition that his opposition did not cause his termination. Similarly, for the claim of First Amendment retaliation Defendants relied on the same evidence. Plaintiff's speech must have been a substantial or motivating factor in his termination and it is not enough that the termination followed the speech. Again, the timing of events establishes conclusively that defendant Garcia would have dismissed the Plaintiff for reasons apart from his speech activity. Because the Court should have granted Defendants' Rule 50 motion, Plaintiff's Motion for New Trial and Motion to Amend Judgment should be denied.

## CONCLUSION

Plaintiff has cited no caselaw or statute that mandates the award of back pay or mental anguish damages; Defendants contend that none exist, and that jury was entitled to disbelieve Plaintiff's evidence in this regard. Nor did the Court's Instructions regarding damages, which were not objected to by any of the parties, require the jury to award such damages.

Further, the jury could reasonably have concluded that although there was some connection between Plaintiff's exercise of his right to free speech and/or the filing of his EEOC Complaint, and his termination (e.g., the jury could have concluded that the exercise of free speech/the filing of the EEOC Complaint only minimally influenced the decision to terminate), Plaintiff's termination was imminent regardless of any retaliatory motive by Defendants, or perhaps more importantly, that Plaintiff could and should have been terminated long before he was. Indeed, the evidence, viewed in the light most favorable to Defendants (as this Court is required to do) supports such a conclusion.

16

The jury could also have determined that the Plaintiff's "speech activities"/EEOC Complaint may have influenced (ever so slightly) the Defendant's decision to terminate Plaintiff, but yet gone on and determined that the Defendants were not the proximate cause of the Plaintiff's damages, if any, or that Defendants would have dismissed Plaintiff for reasons apart from the filing of the EEOC charge or his speech about it.

In addition, the jury could reasonably have disbelieved Plaintiff's testimony regarding damages. The jury could also have reasonably concluded that Plaintiff could and should have done more to obtain other employment.

Alternatively, if the Court should be inclined to grant Plaintiff's Motion for New Trial, then Defendants respectfully request that their counsel be allowed to interview the individual jurors and question them not only as to the basis for their findings with regard to damages, but their findings with regard to liability, to determine whether the jury's verdict was a compromised verdict, and if so the Court must grant a new trial on all issues.

There is simply no rational, much less compelling, basis for this Court to grant Plaintiff any of his requested equitable relief. Based on the evidence of record, reinstatement would make no sense whatsoever. Injunctive relief, likewise, is not supported by the evidence; the only possible retaliator, Defendant Garcia, is no longer an employee of TAMUK, and consequently should not and cannot be enjoined from further retaliation against the Plaintiff. Ultimately Plaintiff failed to achieve in any way his ultimate goal in this litigation and any injunctive relief would be inappropriate.

Based on any and all of the above arguments, Defendants respectfully request that this Court deny Plaintiff's Motions.

17

Respectfully submitted,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

TONI HUNTER
Chief, General Litigation Division

JOSE M. RANGEL
Texas Bar No. 16543550

DONA G. HAMILTON
Texas Bar No. 08825600

Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

ATTORNEYS FOR DEFENDANT

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent

via facsimile transmission and U.S. certified mail, return receipt requested, on April 4, 2001, to:

Gay E. Gilson
LAW OFFICE OF GAY E. GILSON
4600 Ocean Drive, Suite 104D
Corpus Christi, Texas 78412

JOSE M. RANGEL
Assistant Attorney General

19

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSEPH K. CONNOR,<br>  *Plaintiff*, | § | |
| | § | |
| | § | |
| V. | § | |
| | § | CIVIL ACTION NO. C-00-069 |
| TEXAS A&M UNIVERSITY-KINGSVILLE, | § | |
| HUMBERTO GARCIA, Individually and in | § | |
| his Official Capacity; and ROBERT BAZAN, | § | |
| Individually and in his Official Capacity, | § | |
|   *Defendants*. | § | |

---

## ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL AND MOTION TO ALTER AND/OR AMEND JUDGMENT

---

Came on for consideration Plaintiff Connor's Rule 59(a)-(e) Motion for New Trial on Damages and Motion to Alter and/or Amend Judgment to Include Equitable Relief ("Plaintiff's Motion"), Defendants' Response thereto, and after consideration of the papers of this cause, and based on a review of Plaintiff's Motion and the evidence, the Court finds that Plaintiff's Motion lacks merit, and should be denied. Therefore,

**IT IS ORDERED** that Plaintiff Connor's Rule 59(a)-(e) Motion for New Trial on Damages and Motion to Alter and/or Amend Judgment to Include Equitable Relief is hereby **DENIED** in all respects.

SIGNED this the _____ day of April, 2001.

<br>

          _____

          HON. B. JANICE ELLINGTON
          UNITED STATES MAGISTRATE JUDGE